COMMONWEALTH *vs.* STEPHEN P. CASSIDY.

Hampshire. April 2, 1991. - May 16, 1991.

Present: LIACOS. C.J., ABRAMS. NOLAN. LYNCH. & GREANEY, JJ.

*Practice, Criminal*, Mistrial, Judicial discretion, Double jeopardy, Deliberation of jury. *Constitutional Law*, Double jeopardy. *Jury and Jurors.*

At a rape trial the judge correctly concluded that the jury had been tainted by the misconduct of one of the jurors and his declaration of a mistrial over the defendant's objection, after affording counsel a full opportunity to be heard and considering carefully the alternatives to a mistrial, was the product of a manifest necessity for such action. [176-180]

INDICTMENT found and returned in the Superior Court Department on December 7, 1988.

Following a declaration of a mistrial by *George C. Keady, Jr.*, J., a motion to dismiss was heard by *John F. Moriarty*, J., and a question of law was reported by him. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further review.

*S. Thomas Martinelli* for the defendant.

*Ariane D. Vuono*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant in this case, Stephen P. Cassidy, was indicted for rape. He was first tried in October of 1989. After four days of testimony and approximately one full day of deliberations, the judge declared a mistrial, thus ending the first proceeding. Cassidy thereafter filed a motion to dismiss the indictment on the ground that further proceedings would violate the double jeopardy clause of the Fifth Amendment to the United States Constitution. The motion judge

reported the matter to the Appeals Court,[1] which held that a second trial would not violate the Constitution because the judge at the first trial was faced with "manifest necessity" for a mistrial. *Commonwealth* v. *Cassidy*, 29 Mass. App. Ct. 651 (1990). We granted the defendant's motion for further appellate review, and we too determine that the defendant may be constitutionally retried on the rape indictment.

The first trial in this case began on October 26, 1989. While selecting a jury, the trial judge asked the potential jurors, among other things, whether they or any member of their family had "ever been the victim of a sexual assault or involved in any way in a rape or a prosecution for rape." All of the jurors who were empaneled responded in the negative.

On November 2, 1989, the second day of deliberations, the jury sent a note to the judge which read, "We have just learned that one of the jurors was involved in a rape case, and her decision is being affected by her past." The prosecutor, defense counsel and court reporter had left for lunch, so the judge, accompanied by the clerk of courts and two court officers, went to the jury room and instructed the jury to stop deliberating. Shortly thereafter, the jurors sent a second note to the judge which read "[n]ow the juror says she was only molested and it never went to court."

When the court reporter, defense counsel, and prosecutor returned, the judge held a lobby conference during which he read the two notes to the attorneys. The judge began the discussion of the matter by stating that he believed the jury was too tainted for the trial to continue. He then asked the prosecutor and defense counsel their opinions of the matter. A

---

[1] After setting forth the facts of the case in full, the report stated "[w]hether under all these circumstances the declaration of a mistrial at the time when the judge declared it was so 'manifestly necessary' as to warrant a retrial is a question which, in my opinion, is sufficiently doubtful to require the decision of the Appeals Court before the parties and the witnesses are put through the agony and expense of a second trial.

"I therefore respectfully report the case to the Appeals Court for a determination of that question."

brief recess was taken to allow the prosecutor and defense counsel to consult with various interested parties.

When the lobby conference reconvened, the defense counsel asked the judge to attempt to save the case by conducting a voir dire of the suspected juror to determine what had actually happened, replacing her with one of the alternates, and asking the remaining jurors whether they felt they could proceed in an unbiased manner. Defense counsel also asked the judge to save the case in "any other way you might think of."

The judge declined to question the suspect juror or the rest of the jury. He decided that, because the jury had been deliberating for almost seven hours, it would be impossible to determine what effect the statements of the suspected juror may have had on the rest of the jury. The judge also decided that it would be extremely difficult, if not impossible, to question the jury about such an effect without inquiring into the deliberative processes of the jury. After hearing arguments from both defense counsel and the prosecutor, the judge declared a mistrial. The defendant subsequently moved to dismiss the indictment on the basis of the double jeopardy clause of the Fifth Amendment to the United States Constitution.

The Fifth Amendment to the United States Constitution reads, in part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life and limb." The United States Supreme Court has held that this restriction is applicable to the States through the due process clause of the Fourteenth Amendment to the United States Constitution. *Benton* v. *Maryland*, 395 U.S. 784, 793-796 (1969). The common law of Massachusetts has long provided similar protection to criminal defendants. See *Commonwealth* v. *Bowden*, 9 Mass. 494 (1813); *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974); *Commonwealth* v. *Smith*, 404 Mass. 1, 4 (1990).

The general rule for determining whether the grant of a mistrial over the defendant's objection[2] in one trial will bar the commencement of a second trial was put forth by Justice Story in *United States* v. *Perez,* 22 U.S. (9 Wheat.) 579, 580 (1824): "We are of opinion, that the facts constitute no legal bar to a future trial. . . . We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere."

The emphasis on the "sound discretion" of the trial judge in declaring a mistrial was underscored by the Supreme Court in *Gori* v. *United States,* 367 U.S. 364 (1961). There the Court noted, "Where, for reasons best deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Id.* at 368.

The Supreme Court further explained the level of appellate scrutiny appropriate to cases involving mistrials in *Arizona* v. *Washington,* 434 U.S. 497 (1978). The Court noted that different levels of appellate review were appropriate for different types of cases. At one extreme, warranting strict scrutiny, are cases where "the basis for the mistrial is the unavailability of critical prosecution evidence, or when there

---

[2]The defendant did not formally object to the mistrial, but the report of the case stated "[defense counsel] did . . . ask the judge to try to avoid a mistrial . . . . I think that the mistrial must be taken to have been declared over the defendant's objection." We accept the question as the judge reported it. Cf. *Gori* v. *United States,* 367 U.S. 364, 365 & n.6 (1961) (mistrial declared in the absence of defendant's "active and express consent" analyzed under the manifest necessity doctrine).

is reason to believe the prosecution is using the superior resources of the state to harass or to achieve a tactical advantage over the accused" (footnote omitted). *Id.* at 508. At the other extreme, warranting great deference to the trial judge's determination, are mistrials "premised upon the trial judge's belief that the jury is unable to reach a verdict." *Id.* at 509.

This court, interpreting the Federal decisions, has stated that "[a]ppellate deference will be accorded the trial judge's discretionary determination that 'manifest necessity' exists only if the record reflects that the trial judge gave reasoned consideration to the various available alternatives as well as to questions of fairness before declaring a mistrial." *Jones* v. *Commonwealth*, 379 Mass. 607, 622 (1980). "Two principles emerge for guidance [in reviewing a finding of manifest necessity for a mistrial]: (1) counsel must be given full opportunity to be heard and (2) the trial judge must give careful consideration to alternatives to a mistrial." *Commonwealth* v. *Steward*, 396 Mass. 76, 79 (1985). If the two requirements are met, and there is no indication that the judge acted other than impartially, we will accord substantial deference to the judge's finding.

Here the judge afforded both the prosecutor and defense counsel ample opportunity to air their views on this matter. There is no allegation that either party was not allowed to be heard. The judge also considered several alternatives to declaring a mistrial, and made a record of his reasons for rejecting those alternatives.

The judge considered and rejected the defense counsel's suggestion that the suspect juror be questioned by the judge and, if found to be unqualified, discharged from the jury. The judge determined that removal of a deliberating juror in these circumstances would have an unpredictable effect on the remaining jurors. We have stated that "[t]he discharge of a deliberating juror is a sensitive undertaking and is fraught with potential for error." *Commonwealth* v. *Connor*, 392 Mass. 838, 843 (1984). Moreover, we have stated that "[i]n dealing with all aspects of the problem of discharging a deliberating juror, the utmost caution is required to avoid in-

vading the province of the jury." *Id.* at 844; cf. *Commonwealth* v. *Fidler*, 377 Mass. 192, 201 (1979). Here, after careful consideration and with the benefit of arguments from counsel, the judge determined that the proposed inquiry could not be made without inquiring into the deliberative processes of the jury. We believe that, in these circumstances, such a determination is well within the judge's discretion.

The defendant argues that there were several alternatives to mistrial which the judge did not consider. A judge cannot be required to consider every conceivable alternative before declaring a mistrial; so to require would be to ask the impossible. The judge must consider reasonable available alternatives. If an alternative which was neither suggested by counsel nor considered by the judge is later developed, we will not fault the judge, so long as an honest inquiry into alternatives is made.

The defendant argues that the judge did not consider the following alternatives: (1) replacing the suspect juror with an alternate; (2) examining the rest of the panel to determine the impact on deliberations; (3) giving cautionary instructions to the jurors; (4) continuing with eleven jurors; and (5) a combination of the above. After hearing, the judge rejected the defendant's arguments because he was convinced that the entire jury had been irretrievably tainted by the misconduct of one of its members. He was rightly loathe to examine the entire panel to attempt to determine the impact of the errant juror on the rest of the jury. The alternatives offered by the defendant on appeal would not answer these two major concerns of the judge. Therefore, we defer to the determination of the trial judge.

We are further persuaded that a retrial would not violate the Fifth Amendment's proscription against double jeopardy by the analogous case of *Simmons* v. *United States*, 142 U.S. 148 (1891). In that case, it was revealed to the Court that one of the jurors swore falsely that he knew neither of the parties. The trial court declared a mistrial and the Supreme Court held that a new trial was not barred by the Fifth

Amendment. See also *Thompson* v. *United States*, 155 U.S. 271 (1894) (mistrial based on the fact that a juror was disqualified by reason of having sat on grand jury which indicted defendant justified by manifest necessity).

We agree with the Appeals Court that the mistrial in the first case was the product of a manifest necessity for such action, and the defendant may be retried without violating either the double jeopardy clause of the Fifth Amendment to the United States Constitution or the common law of Massachusetts.