## COMMONWEALTH *vs.* SOMVANG PHETSAYA.

No. 94-P-1316.

Middlesex. September 20, 1995. - April 17, 1996.

Present: PERRETTA, SMITH, & IRELAND, JJ.

*Constitutional Law,* Double jeopardy, Self-incrimination. *Practice, Criminal,* Mistrial, Assistance of counsel. *Judge.*

In the circumstances of a criminal trial, the lack of objection from defense counsel could not be construed as consent to the judge's declaration of a mistrial. [297-298]

At the trial of criminal complaints before a jury of six, there was no manifest necessity for the judge to have declared a mistrial on the basis of the supposed ineffectiveness of defense counsel, where nothing in the record properly supported such a conclusion and where the judge did not give careful consideration to alternatives to declaring a mistrial: principles of double jeopardy thus barred the retrial of the defendant. [298-301]

A District Court judge was without authority to assess criminal defense counsel $1500 in "costs" upon the declaration of a mistrial, moreover the record was barren of reasons or any basis for such an assessment. [301]

COMPLAINTS received and sworn to in the Lowell Division of the District Court Department on August 10, 1993.

On appeal to the jury session of that division, the cases were tried before *Jonathan Brant,* J., and, after the declaration of a mistrial, a motion to dismiss was heard by *William E. Melahn,* J.

*Alison M. Takacs,* Assistant District Attorney, for the Commonwealth.

*Stanley W. Norkunas* for the defendant.

SMITH, J. The defendant was convicted at a bench trial of unlawful possession of a firearm and unlawful possession of ammunition. He was found not guilty of possession of an altered firearm. He appealed to the jury-of-six session.

On December 14, 1993, trial commenced before a judge and a jury. After the Commonwealth and defendant rested, the judge declared a mistrial on the ground that defense counsel was so ineffective that the defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution. The judge also assessed defense counsel $1,500 in costs, which the judge later waived. At both the primary and jury trial levels, the defendant was represented by the same bar advocate assigned by the court at the time of the defendant's arraignment.

After the mistrial was declared, new trial counsel was appointed for the defendant. That counsel filed a motion to dismiss the complaints on the ground that a second jury trial would violate the Fifth Amendment to the United States Constitution and the Massachusetts common law by placing the defendant in jeopardy twice. The defendant claimed that the judge at his first jury trial had declared a mistrial when there was no manifest necessity for that action.

The hearing on the defendant's dismissal motion was heard by a judge who was not the trial judge. The motion judge read the transcript of the jury trial and listened to arguments of counsel for the defendant and for the Commonwealth. The motion judge found that defense counsel was not ineffective in his defense of the defendant and that the trial judge, in any event, failed to consider reasonable alternatives to the declaration of a mistrial. The motion judge concluded that there had been no manifest necessity for the trial judge's declaration of a mistrial and granted the defendant's motion to dismiss the complaints. The Commonwealth appealed the judge's action. Mass.R.Crim.P. 15(a)(1), 378 Mass. 882 (1979).

The Commonwealth argues that the trial judge was correct in declaring a mistrial because, on the facts of this case, defense counsel was ineffective in his representation of the defendant; the judge considered all reasonable alternatives, and there remained a manifest necessity to declare a mistrial.

We summarize the evidence introduced at the jury trial and the events that led up to the declaration of a mistrial. On July 21, 1993, at 11:30 P.M., two uniformed Lowell police officers were in a marked cruiser in a park. They saw a red

Nissan automobile with its lights out, parked in the middle of a park roadway. The cruiser pulled up to the Nissan, nose to nose, and an officer flicked its lights on and off. The police officers were able to see two persons in the front seat and other persons in the back seat. The persons in the front seat were looking up and down, which made the officers suspicious. The police officers put on their "take down" lights at which point the Nissan rolled into the police car. The officers exited their cruiser and approached the Nissan. By use of their flashlights, they examined the interior of the car. They observed the butt of a gun at the feet of the passenger in the front seat and an ammunition clip next to the operator's feet. They arrested the defendant, who was the operator of the motor vehicle.

After the Commonwealth rested, the jury were excused, and defense counsel was informed that a witness he planned to call had arrived. That prospective witness was a fourteen year old youth who had been a passenger in the defendant's automobile on the night in question. During his opening statement, defense counsel had stated to the jury that "[h]opefully, I'll be able to present a witness, who can explain some things to you, because I think you are entitled to an explanation, even though the defendant has no burden to prove. Sometimes an explanation of events is helpful. And hopefully I will be able to present a . . . witness who can testify as to what occurred that night and explain what the furtive movements observed actually were from someone who was in the car."

The prosecutor argued that the witness would have "a legitimate Fifth Amendment issue" which he could waive but, according to the prosecutor, the witness could not waive his privilege against self-incrimination without his parents' "advice." Defense counsel responded that the prospective witness's testimony would not incriminate him. The judge interrupted defense counsel and said, "It's not for you to say is it?" After further discussion, defense counsel decided not to call the witness and apologized to the judge because he had not anticipated the Fifth Amendment issue. The defendant then rested without calling any witnesses.

After the defendant rested, the judge, in open court, told defense counsel that he was "very troubled" about defense counsel's performance in representing the defendant, who "is

on trial for very serious offenses, one of which carries mandatory time in jail." The judge stated that he did not "have a sense sir that [defense counsel] ha[d] ever tried a case before. . . ." Defense counsel interrupted the judge and stated that this was his first jury trial.

The judge then said, "I don't have a sense that you have a clue what you are doing, I don't have a sense that you have any trial strategy in mind . . . . I don't have a sense that you have any kind of presence before the jury and frankly the evidence against your client is overwhelming, so I'm not sure why this case has gone to trial in the first place."

The judge again said that he was "very troubled" because "the way that the evidence has come in, the probability is that the jury will return a verdict of guilty, and I will be asked to sentence [the defendant] to at least the mandatory minimum sentence." The judge then stated that the defendant had "not received even the . . . minimum level of competency that we expect in a courtroom. . . ." The judge told defense counsel that he was not quite sure what to do in regard to defense counsel's competency "except to raise [that issue] now, rather than wait until [the defendant] is in jail and files a motion for a [new] trial based on ineffective assistance of counsel."

Defense counsel responded that the reason the case went to trial was "because of the minimum mandatory [sentence]." Counsel then explained that his theory of the case was that he "was trying to establish that the Commonwealth had not established knowledge" by the defendant that there was a gun in the automobile. Counsel further stated that he was "aware of the evidence against [the defendant] and . . . the only chance he would have before a jury would be to make the Commonwealth prove beyond [a] doubt that [the defendant] was aware [of the presence of the gun] . . . . I do understand . . . your position and I do apologize to the court. There are many things that I should have done differently. I thought that I was giving a good defense with the case I'd prepared, I have prepared it and I have researched all along and I am aware of the burdens."

At that point, the prosecutor said to the judge, "Your Honor, based on the Court's concerns and the Court concerns on the record, I suggest that this time might be appropriate to declare a mistrial." The judge then stated, "Well if I do

that I'm going to assess costs against counsel. What do you say to that?" Defense counsel responded, "I understand, your Honor."

The judge then made the following finding: "[T]he presentation of defense counsel falls below the average which is expected of a normally competent attorney, member of the bar. . . . and therefore, in light of the fact that the defendant is on trial for a matter which . . . carries a mandatory minimum sentence and in light of the ineffective assistance that I believe he has received from [defense] counsel throughout this trial, from opening to the present and not simply related to the issue of calling the witness and matters that we've discussed, in light of my concern, I declare a mistrial. I'm assessing costs in the amount of $1,500 against [defense] counsel."

The Fifth Amendment to the United States Constitution provides, in part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." That provision is applicable to the States through the Fourteenth Amendment to the United States Constitution. *Benton* v. *Maryland*, 395 U.S. 784, 793-796 (1969). "The common law of Massachusetts has long provided similar protection to criminal defendants." *Commonwealth* v. *Cassidy*, 410 Mass. 174, 176 (1991).

A mistrial that is declared over the defendant's objection will not bar a second trial whenever it is the trial judge's opinion that, "taking all the circumstances into consideration, there is a manifest necessity for the [declaration of a mistrial], or the ends of public justice would otherwise be defeated." *Commonwealth* v. *Cassidy*, 410 Mass. at 177, quoting from *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824).

1. *Lack of objection to the declaration of a mistrial.* "The manifest necessity test does not apply when the defendant has requested or effectually consented to the mistrial." *United States* v. *DiPietro*, 936 F.2d 6, 9 (1st Cir. 1991). Here, the defendant did not request a mistrial. Rather, it was the prosecutor who suggested that it might be appropriate to declare a mistrial. After the prosecutor's suggestion, the trial judge did not ask defense counsel to comment on the possible declara-

tion of a mistrial.[1] However, there is nothing in the record that demonstrates that defense counsel or the defendant objected to the declaration of a mistrial. "[C]onsent to a mistrial may be inferred from silence where a defendant had the opportunity to object and failed to do so." *Id.* at 9-10. Cf. *Gori* v. *United States*, 367 U.S. 364, 365 & n.6 (1961) (mistrial declared in the absence of defendant's "active and express consent" analyzed under the manifest necessity doctrine).

We hold that, in the circumstances present here, the lack of an objection from defense counsel cannot be construed as consent to the declaration of a mistrial. Although not intended by the trial judge, the judge's statements to defense counsel that he was incompetent and ineffective and the judge's action of assessing defense counsel $1,500 in costs were undoubtedly so intimidating to defense counsel, who was trying his first jury case, as to foreclose any objection from defense counsel to the declaration of a mistrial. As for the defendant, after hearing the trial judge state that his lawyer is incompetent and ineffective, it could not be expected that he would object to the declaration of a mistrial.

2. *The finding of manifest necessity.* A trial judge has "broad discretion" in determining whether manifest necessity requires the declaration of a mistrial. *Illinois* v. *Somerville*, 410 U.S. 458, 462 (1973).

However, "[a]ppellate deference will be accorded the trial judge's discretionary determination that 'manifest necessity' exists only if the record reflects that the trial judge gave reasoned consideration to the various available alternatives as well as to questions of fairness before declaring a mistrial." *Jones* v. *Commonwealth*, 379 Mass. 607, 622 (1980). "Two principles emerge for guidance [in reviewing a finding of manifest necessity for a mistrial]: (1) counsel must be given full opportunity to be heard and (2) the trial judge must give careful consideration to alternatives to a mistrial." *Commonwealth* v. *Cassidy, supra* at 178, quoting from *Commonwealth* v. *Steward*, 396 Mass. 76, 79 (1985).

Here, the judge did not give "careful consideration to alternatives to a mistrial." *Commonwealth* v. *Cassidy, supra* at 178. He did consider sending the case to the jury, but

---

[1]The trial judge did request defense counsel to comment on the imposition of costs but not on declaring a mistrial.

rejected the idea because he thought that they would return a guilty verdict and that subsequently the defendant would file a motion for a new trial on the ground of ineffective assistance of counsel, which the judge would have to allow.

It is a chancy business indeed for a judge, or anyone for that matter, to predict a verdict that a jury may return in a case, even when the judge determines that counsel's performance is ineffective. Some courts that have considered the issue have concluded that the "mere possibility" that a defendant may later raise a claim of ineffective assistance of counsel by a motion for a new trial does not meet the standard of manifest necessity to warrant a mistrial. *Cross* v. *State*, 813 P.2d 691, 696 (Alaska Ct. App. 1991) (court held that there was no manifest necessity for mistrial because of mere possibility that the defendant might, at some later date, claim ineffective assistance of counsel). In *State* v. *Friel*, 500 A.2d 631, 635 & n.3 (Me. 1985), the Supreme Judicial Court of Maine observed that, even where a trial judge is correct in finding ineffective assistance of counsel and revokes counsel's appointment, the trial judge should still employ options less drastic than a mistrial. See also *Elder* v. *Commonwealth*, 385 Mass. 128, 133 (1982) ("possible 'avenue of appeal' does not approach the degree of necessity that permits subordination of the defendant's interests in pursuing his trial to completion").

We recognize that "there is no prescribed formula for determining whether manifest necessity exists." *Collins* v. *Commonwealth*, 412 Mass. 349, 352 (1992). However, even if ineffectiveness of counsel might be a sufficient justification for the declaration of a mistrial under some circumstances, that rationale does not withstand scrutiny here.

It is, of course, settled that a defendant in a criminal case is entitled to the effective assistance of counsel. "[T]he standard of ineffectiveness has been described as 'behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer.' " *Commonwealth* v. *Gelpi*, 416 Mass. 729, 730 (1994), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). If such behavior is found "then, typically, [we review to see] whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *MacKenzie*, 413 Mass. 498, 517 (1992), quoting from *Commonwealth* v. *Saferian*, 366 Mass. at 96.

The judge identified the following factors as the basis for his conclusion that defense counsel was ineffective in his defense of the defendant: (1) the evidence was overwhelming against the defendant and the judge was not "sure why this case has gone to trial in the first place"; (2) defense counsel did not have "any trial strategy in mind"; (3) defense counsel's lack of "presence" before the jury, and (4) defense counsel's failure to obtain parental consent from the parents of a fourteen year old prospective witness who, apparently to the trial judge, would be required to waive his right against self-incrimination. We hold that none of the factors, either alone or in combination, amounted to ineffective assistance of counsel.

The fact that the evidence was so overwhelmingly against the defendant, causing the judge to wonder why the case had gone to trial, should not have been considered by the judge in determining that defense counsel was ineffective. Under both the State and Federal Constitutions, a person accused of a crime is guaranteed the right to a trial, either with or without a jury. It is the defendant, not defense counsel, who makes the decision either to have a trial or to dispose of the matter in some other manner, such as a guilty plea or admission to sufficient facts. Defense counsel may advise the defendant as to the proper course to follow, but, in the final analysis, it is the defendant who must make the final decision. In our system of criminal justice, defense counsel should not be criticized, especially by a judge, for a defendant's decision to proceed to trial, even if the evidence is overwhelming.

Contrary to the judge's statement, defense counsel did have a trial strategy. He was testing the Commonwealth's attempt to meet its burden of proof and was attempting to show that the Commonwealth did not prove the defendant's knowledge of the gun's presence. Leaving the Commonwealth to its proof is acceptable trial strategy, especially where the evidence is overwhelmingly against the defendant. Certainly defense counsel should not be required to manufacture defenses in order to avoid being found incompetent and ineffective.

There is nothing in the record that demonstrates defense counsel's lack of "presence before the jury." We observe that the judge did not find it necessary to reproach defense counsel for any misconduct whatsoever at any time during the course of the trial. We also note that the same defense counsel was

successful in having the defendant found not guilty of one of the charges at the initial bench trial.

Finally, defense counsel was not ineffective in his handling of the potential self-incrimination issue. The prosecutor raised the issue by informing the judge that he believed that the fourteen year old witness, if allowed to testify, would incriminate himself. Defense counsel, in response, stated that the witness would not incriminate himself. The judge never asked the prosecutor for the basis for his conclusion. The judge, instead, presumed that the witness, because he was in the car on the evening in question, would incriminate himself and immediately considered the second issue, whether the fourteen year old witness could waive his privilege against self-incrimination without his parents' "advice." The judge should first have asked the prosecutor for his reason for expecting that the witness would incriminate himself and then made a ruling on the matter. In any event, it does not appear to us that defense counsel was ineffective in this regard.

The assessment of $1,500 in costs against defense counsel deserves comment even though the judge later waived the payment. We are not aware of any authority that permits a judge to assess costs in these circumstances. Defense counsel was not contemptuous in his speech to the court; in fact, he was obsequious, almost to a fault. The record is barren of the judge's reasons for assessing costs against defense counsel, and we fail to see why they were assessed in the first place.

We affirm the allowance of the defendant's motion to dismiss the complaints.

*So ordered.*