NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11643

COMMONWEALTH  vs.  SEAN EVELYN.


Suffolk.     November 3, 2014. - March 2, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Lenk, & Hines,
JJ.


Homicide.  Practice, Criminal, Argument by counsel, Admissions
    and confessions, Waiver.  Constitutional Law, Waiver of
    constitutional rights, Admissions and confessions.  Due
    Process of Law, Fair trial.  Supreme Judicial Court,
    Superintendence of inferior courts.



    Indictments found and returned in the Superior Court
Department on February 23, 2007.

    The cases were tried before Frank M. Gaziano, J.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Jeanne M. Kempthorne for the defendant.
    Donna Jalbert Patalano, Assistant District Attorney, for
the Commonwealth.
    Donald A. Harwood & David A.F. Lewis, for Committee for
Public Counsel Services & another, amici curiae, submitted a
brief.

GANTS, C.J.  After an altercation with Cushings Fortuna (victim), the defendant returned to his vehicle, removed a gun from a hidden compartment, chased the victim, and shot him dead. At trial, the defendant's attorney in opening statement conceded that the defendant committed the killing, and told the Superior Court jury that the issue they had to decide was whether the defendant was guilty of manslaughter or murder.  The jury convicted the defendant of murder in the second degree and of possession of a firearm without a license.[1]  The defendant appealed his convictions, and we granted direct appellate review.

The defendant claims that his attorney's concession at trial that the defendant was guilty of manslaughter was tantamount to a guilty plea, and that a colloquy between the judge and the defendant was therefore constitutionally required to ascertain that the defendant made the concession knowingly and voluntarily.  The defendant contends that, because such a colloquy did not take place, he was deprived of due process and the right against self-incrimination, and he asks that we vacate his convictions and remand for a new trial.  We conclude that, in these circumstances, no colloquy between the judge and the defendant is required.  We note that the defendant in this case

---

[1] The defendant was found not guilty on indictments charging the possession of cocaine and of marijuana.

expressly did <u>not</u> claim ineffective assistance of counsel and there is nothing in the record to suggest that the defendant did not consent to his attorney's strategic concession.[2]

Background.  We summarize the evidence at trial.  On December 31, 2006, the defendant (who was then twenty years old) and his former girl friend, Shantel Baxter, drove his cousin into Boston to drop him off at the South Station bus terminal. At around 3:30 P.M., the defendant double-parked his vehicle on Atlantic Avenue, and Baxter stayed with the vehicle while the defendant walked with his cousin into the bus terminal.  At approximately 4:04 P.M., as the defendant was about to leave the bus terminal, the victim entered the terminal with his brother, Patrick Fortuna,[3] and his girl friend's cousin, Robertho Francois, and confronted the defendant, getting "[r]ight in his face."  The defendant "tr[ied] to walk away" in the direction of his vehicle, but the victim and Patrick followed him.  As they approached the defendant's vehicle, the victim pulled the defendant up against an adjacent vehicle, grabbed the defendant by the neck, said that the defendant owed him money, and was

---

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services and the Massachusetts Association of Criminal Defense Lawyers.

[3] Because the victim and his brother have the same last name, we shall refer to the brother by his first name.

"kneeing" the defendant and "calling [him] a pussy" and "a bitch-ass nigger."

Baxter came out of the defendant's car, physically "trying to get between them" and "begging [the victim] to stop," but the victim swung his elbow at her and "told [her] to get the fuck off of him."  The victim "just kept squeezing [the defendant's] neck," "kicking him," "spitting on him," and "yelling in his face."  After the victim yelled that he needed the defendant's telephone number, Baxter provided the number to Patrick in an effort to get the victim to stop.  Then, Patrick said to the victim, "All right.  Let's go."  Shortly afterwards, the victim and Patrick, along with Francois (who had been watching from a short distance), walked away from the defendant towards the bus terminal.

The defendant and Baxter got back into the defendant's vehicle.  As they sat there, the defendant told Baxter (who was in the passenger's seat) to "move the car," and a short time later,[4] he left the vehicle and headed back towards the bus terminal.  When Baxter got into the driver's seat, she noticed

---

[4] Baxter testified that she and the defendant sat in the car for "a couple seconds" or "a couple minutes."

that the "secret compartment" installed in the vehicle's dashboard (which moments earlier had been shut) was now open.[5]

The victim, Patrick, and Francois "were walking back toward the bus station" when the victim "turn[ed] his head back," and suddenly started to run, as did Patrick and Francois. Gunshots were fired. Patrick ran in a different direction from that of the victim and Francois, and the victim later turned right on South Street while Francois turned left. At that point, Francois "turn[ed] around" and saw the "same man" that the victim had assaulted follow the victim down South Street. The defendant caught up with the victim, and shot him three times: once in the arm, once in the back, and once in the head. The victim fell to the ground, and the defendant fled.[6] At approximately 4:24 P.M., a Boston police officer arrived at the scene, and determined that the victim did not have a pulse. The victim was pronounced dead at 4:45 P.M., and the cause of death was identified as gunshot wounds to the head and chest.

At trial, defense counsel in his opening statement conceded that the defendant had committed the killing but stated that the

---

[5] Baxter testified that she did not see anything inside the compartment. When police searched the defendant's vehicle after seizing it in the aftermath of the shooting, they found a small plastic bag containing cocaine in the compartment. A small bag of marijuana was also found in one of the vehicle's "rear map pockets."

[6] A week after the shooting, Francois participated in a police lineup and identified the defendant as the shooter.

evidence would show that the defendant was guilty of manslaughter, not murder in the first or second degree.[7]  He declared:

> "[The defendant] no doubt did a terrible thing and no doubt he's guilty of very serious crimes.  But the issue here is going to be did he act in a heat of passion, did he have the ability to reason, to think about what he was going to do, to premeditate, which is what's required for first degree murder . . . or did he act out of a rage that he and any reasonable person would have felt treated the way he was treated, assaulted and humiliated . . . ."

Defense counsel continued to pursue this strategy in his closing argument, noting that "our law recognizes that there are times when a person can be so provoked by what . . . somebody else does to them, that even if they commit a terrible act of killing that person, . . . they don't have the malice required for murder."  He argued that "[t]he evidence in this case . . . shows very clearly that [the defendant] acted out of heat of passion," and therefore should be found guilty of manslaughter, not murder.  The jury did not find the defendant guilty of

---

[7] Before trial, the defendant had agreed to plead guilty to manslaughter and the other three indictments, and a change of plea hearing was conducted where a judge in the Superior Court was presented with a joint sentencing recommendation by the Commonwealth and the defendant.  However, during the plea colloquy, when the judge (who was not the trial judge) inquired of the defendant whether he "[has] been fully, fairly, and adequately represented by [his attorney] in this case," the defendant replied, "Not really."  The defendant explained that he had not been aware of the two drug charges and had not known he was going to be pleading guilty until he walked into the court room.  At that point, the judge declined to accept the guilty plea and set the matter for trial.

murder in the first degree, as argued by the prosecutor, but did find the defendant guilty of murder in the second degree.

Discussion. The defendant asserts that, where defense counsel concedes the defendant's guilt in opening statement, due process "requires an intelligent and voluntary waiver by the defendant in a non-capital case," "[n]o less than in the case of a guilty plea, or an admission to sufficient facts, or a stipulation of facts in a trial, or a waiver of jury trial."

Before we address this claim, it is important to be clear as to what the defendant is not claiming on appeal. Specifically, the defendant is not claiming that he received ineffective assistance of counsel. He does not claim that his trial counsel did not discuss this strategic concession with him before opening statement, or that he did not consent to this course of action; the record is silent regarding his discussions with trial counsel on this issue.[8] Nor does he claim that it was "manifestly unreasonable" for trial counsel to have made this strategic choice. See Commonwealth v. Glover, 459 Mass. 836, 843 (2011). He admits that his trial counsel "perhaps even correctly believed" that it served the defendant's interest to concede guilt to the lesser included offense of manslaughter to attempt to avert conviction on the murder indictment. Rather,

---

[8] His trial counsel was not his counsel for the aborted guilty plea hearing.

he claims that the absence of a colloquy by the judge, standing alone, constitutes a violation of due process that requires that the defendant's convictions be vacated.  We disagree.

Where a defendant tenders a guilty plea, the judge must engage the defendant in a colloquy before accepting the plea because "[d]ue process requires that 'a guilty plea should not be accepted, and if accepted must be later set aside,' unless the contemporaneous record contains an affirmative showing that the defendant's plea was intelligently and voluntarily made." Commonwealth v. Furr, 454 Mass. 101, 106 (2009), quoting Commonwealth v. Foster, 368 Mass. 100, 102 (1975).  See Boykin v. Alabama, 395 U.S. 238, 242-243 (1969).  See also Commonwealth v. Duquette, 386 Mass. 834, 842-843 (1982) (if admission to facts sufficient to support finding of guilt "is to be given the effect of a guilty plea, it must be supported by the same demonstrations of voluntariness and intelligence that are required of any other guilty plea").  The reason for requiring a plea colloquy is that, by pleading guilty, the defendant waives three constitutional rights -- the right to a jury trial, the right to confront witnesses, and the privilege against self-incrimination -- and "[w]e cannot presume a waiver of these three important . . . rights from a silent record." Boykin, supra at 243.  See Commonwealth v. Fernandes, 390 Mass. 714, 715-716 (1984) ("Because a plea of guilty involves these

constitutional rights, the plea is valid only when the defendant offers it voluntarily, with sufficient awareness of the relevant circumstances, . . . and with the advice of competent counsel"). See also Mass. R. Crim. P. 12 (c), as appearing in 442 Mass. 1511 (2004).[9]

Where a defendant, instead of pleading guilty, agrees to try a case to a judge on stipulated evidence in an effort to preserve his or her right to appeal the judge's pretrial rulings, we have also required a colloquy to ensure that the defendant has knowingly and voluntarily waived the right to a jury trial, the right to confront witnesses, and the privilege against self-incrimination. See Commonwealth v. Lewis, 399 Mass. 761, 763-764 (1987) (reversing conviction for absence of colloquy where "parties stipulated to what the Commonwealth's evidence would be" and defendant offered no evidence); Commonwealth v. Castillo, 66 Mass. App. Ct. 34, 36-38 (2006) (where defendant stipulated to material facts conclusive of

---

[9] "After being informed that the defendant intends to plead guilty or nolo contendere:  . . . The judge shall inform the defendant on the record, in open court:  . . . that by a plea of guilty or nolo contendere, or an admission to sufficient facts, the defendant waives the right to trial with or without a jury, the right to confrontation of witnesses, the right to be presumed innocent until proved guilty beyond a reasonable doubt, and the privilege against self-incrimination."  Mass. R. Crim. P. 12 (c) (3) (A), as appearing in 442 Mass. 1511 (2004).  "The judge shall conduct a hearing to determine the voluntariness of the plea or admission and the factual basis of the charge." Mass. R. Crim. P. 12 (c) (5).

guilt in case tried to judge, stipulation was tantamount to guilty plea, and failure of judge to engage defendant in plea colloquy required reversal of convictions).  See also Commonwealth v. Brown, 55 Mass. App. Ct. 440, 448-449 (2002); Commonwealth v. Hill, 20 Mass. App. Ct. 130, 132-133 (1985).

Where we have found a constitutional entitlement to a plea colloquy, a defendant has waived at least one of the three constitutional rights that are waived by a guilty plea.  "It is axiomatic that, if the defendant does not plead guilty and does not waive these rights, the judge need not conduct a plea colloquy."  Commonwealth v. Lopez, 447 Mass. 625, 629 (2006), citing Commonwealth v. Stevens, 379 Mass. 772, 774-776 (1980).

Here, the defendant did not waive any constitutional right. He exercised his right to a trial by jury, confronted witnesses against him through cross-examination, exercised his privilege against self-incrimination by not testifying, and stipulated to no facts.  "Unlike the case of a guilty plea, the Commonwealth was put to its proof beyond a reasonable doubt and met it." Stevens, 379 Mass. at 774-776 (no colloquy was required where defense counsel offered to stipulate to prosecution's evidence in effort to preserve defendant's right to appeal pretrial rulings but trial judge refused to accept offer, and defense counsel instead offered no defense when prosecution's evidence was presented at jury-waived trial).  See Commonwealth v.

Ramsey, 466 Mass. 489, 491, 496 n.8 (2013) (case law requiring colloquy where defendant submits to jury-waived trial on stipulated facts did not apply where case was tried to jury and where defendant admitted in his testimony that he possessed drugs and firearm "as part of a litigation strategy to boost his credibility" regarding his defense of necessity to firearms charge); Commonwealth v. Charles, 456 Mass. 378, 383 (2010), quoting Commonwealth v. Shea, 398 Mass. 264, 269 (1986) (where defendant was indicted for possession with intent to distribute but defense counsel encouraged jury to convict on simple possession, defense counsel's concession that substances in defendant's possession were "drugs" did not amount to tacit stipulation as to nature of substances, because "defendant's theory of his case cannot relieve the Commonwealth of its burden of proving every element of a crime beyond a reasonable doubt"). Because defense counsel's concession did not constitute a waiver of the defendant's constitutional rights, the trial judge was not constitutionally required to conduct a plea colloquy confirming that the defendant had waived his rights knowingly and voluntarily.

We recognize that, after a defendant's attorney concedes in opening statement that the defendant is guilty of manslaughter, there is virtually no chance that a jury would return a verdict of anything less than manslaughter. But that may also be true

where a defendant testifies in his or her own defense and admits to the killing, or where a defendant calls a witness to testify to the victim's conduct that provoked the killing and the witness testifies that the defendant subsequently killed the victim.  The purpose of a plea colloquy is to ensure that the waiver of certain fundamental constitutional rights is knowing and voluntary; it is not to ensure that the defense strategy is sound or that the defendant has consented to that strategy. Where a defense attorney's concession is manifestly unreasonable or where a defendant has not consented to that strategy, we have relied on posttrial claims of ineffective assistance of counsel as the remedy for a miscarriage of justice.[10]

---

[10] A defense counsel's decision to concede voluntary manslaughter to strengthen the possibility of sparing the defendant a conviction of murder constitutes ineffective assistance of counsel only where it was "'manifestly unreasonable' when made," and where it prejudiced the defendant by depriving him of a "substantial ground of defense." Commonwealth v. Glover, 459 Mass. 836, 842-843 (2011), quoting Commonwealth v. Acevedo, 446 Mass. 435, 442, 446 (2006).  "When the evidence implicating the defendant is strong, and a concession does not undercut viable defenses, a tactical concession of guilt by counsel in a murder prosecution is securely within the realm of effective representation." Commonwealth v. Arriaga, 438 Mass. 556, 581-582 (2003).  We do not consider here whether it is manifestly unreasonable to pursue such a strategy (regardless of its merits) without the defendant's consent, or whether prejudice should be presumed in such circumstances.  Compare Florida v. Nixon, 543 U.S. 175, 192 (2004) (in capital case, "[w]hen counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice [to concede defendant's guilt at guilt phase of trial in order to focus jury on reasons to spare defendant's life during

We also consider whether, under our supervisory authority, we should require trial judges to conduct a colloquy with the defendant before a defendant's attorney makes a concession of guilt at trial. We have exercised this supervisory authority to require that a colloquy be conducted where a defendant waives the right to a jury trial, even though it is not constitutionally required, because "a supervisory rule requiring a colloquy would aid in 'sound judicial administration' by foreclosing many disputes about whether a waiver of the right to a jury trial was knowingly and voluntarily made." Commonwealth v. Pavao, 423 Mass. 798, 800 (1996), quoting Ciummei v. Commonwealth, 378 Mass. 504, 509 (1979). Cf. Commonwealth v. Davis, 376 Mass. 777, 784-785 (1978) (adopting "prophylactic measure" of requiring judge to conduct colloquy where defendant waives right to conflict-free counsel by agreeing to joint

---

penalty phase of trial] is not impeded by any blanket rule demanding the defendant's explicit consent"), with Commonwealth v. Velez, 77 Mass. App. Ct. 270, 277 & n.9 (2010) ("While Massachusetts has not had the opportunity to apply these principles . . . , courts in other jurisdictions have held that unauthorized concessions of guilt can constitute a lack of adversary testing within the meaning of United States v. Cronic, [466 U.S. 648 (1984)]," which triggers presumption of prejudice), and State v. Harbison, 315 N.C. 175, 180 (1985), cert. denied, 476 U.S. 1123 (1986) ("ineffective assistance of counsel, per se in violation of the Sixth Amendment [to the United States Constitution], has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent").

representation, even though colloquy is not constitutionally required).

We think it more prudent to leave the decision whether to conduct a colloquy regarding a concession of guilt to the sound discretion of the trial judge than to exercise our supervisory authority to require it in all instances. Strategic decisions to concede that a defendant is guilty of lesser included offenses are not uncommon, especially in drug cases, where a defendant may concede the possession of drugs to preserve the credibility of his claim that he or she did not intend to distribute. Nor is it uncommon for a defendant to admit guilt to an offense, such as possession of drugs, to preserve the credibility of the defendant's claim that he or she did not commit a more serious crime, such as illegal possession of a firearm. As noted earlier, such concessions are not limited to a defense attorney's opening statement or closing argument; they may be made in a defendant's trial testimony, or by a defense witness that the defendant calls to the stand knowing that the witness will testify to the defendant's participation in one of the offenses charged.

Requiring a colloquy in all such cases would mean that the judge must be informed in advance of all such concessions, and conduct a colloquy that may invite discussion regarding the defendant's trial strategy. Such an inquiry may be warranted to

determine "whether the defendant understands the significance of his apparent choice," Stevens, 379 Mass. at 776, where (unlike here) there is some indication that the defendant expressly opposes his or her attorney's trial strategy, or the concession appears to be a manifestly unreasonable trial strategy.  But because we can foresee instances where such a concession may not be known in advance (such as where a defendant admits to committing a lesser included offense during cross-examination) and other instances where a wise trial judge, when told of an anticipated concession, may decide that the more prudent course is to proceed without a colloquy, we decline to exercise our supervisory authority to impose a hard and fast rule that would require a colloquy whenever a concession of guilt is made.[11]

Conclusion.  Because no colloquy was required regarding defense counsel's concession of guilt to the lesser included

---

[11] Cf. Commonwealth v. Ortiz, 466 Mass. 475, 477 (2013) (rejecting "defendant's claim that under current rules of practice, a stipulation between the Commonwealth and the defendant as to an element of a crime, no matter when the stipulation is agreed to, must be in writing and signed by him or the subject of a colloquy between the defendant and the trial judge," but in light of Mass. R. Crim. P. 11 [a] [2] [A], as appearing in 442 Mass. 1509 [2004], which directs that any stipulation to the existence of a material fact contained in a pretrial conference report be signed by the defendant himself, asking "this court's standing committee on the rules of criminal procedure to consider whether it would be appropriate to adopt by rule a requirement similar to rule 11 [a] [2] [A] that would apply to stipulations first entered into at or immediately before trial").

offense of manslaughter in opening statement and closing argument, the defendant's convictions are affirmed.

<u>So ordered</u>.