SUPREME JUDICIAL COURT 
 
 ELENA GASTON vs. COMMONWEALTH

 
 Docket:
 SJC-13660
 
 
 Dates:
 June 16, 2025
 
 
 Present:
 
 
 
 County:
 
 

 
 Keywords:
 Supreme Judicial Court, Appeal from order of single justice, Superintendence of inferior courts. Constitutional Law, Double jeopardy, Assistance of counsel. Practice, Criminal, Double jeopardy, Mistrial, Dismissal, Opening statement, Assistance of counsel.
 
 

             The defendant, Elena Gaston, filed a petition in the county court, pursuant to G. L. c. 211, § 3, seeking relief from the denial of her motion to dismiss in the trial court.[1]  The petition was denied by a single justice, and she appealed.  We affirm.
            Background.  The defendant stands indicted on charges of trafficking of persons for sexual servitude, G. L. c. 265, § 50, conspiracy to do the same, G. L. c. 274, § 7, deriving support from prostitution, G. L. c. 272, § 7, and money laundering, G. L. c. 267A, § 2.  The Commonwealth alleges that the defendant ran an escort service in which she arranged for her female employees to go on "dates" with male clients.  The Commonwealth further alleges that, although the defendant undertook efforts to make her business appear legitimate, she was, in fact, knowingly arranging for her employees to provide sexual services to customers on these dates, in exchange for a fee.
            On the day that the defendant's trial was set to begin, the parties informed the trial judge that they had entered into a plea agreement.  Pursuant to the proposed agreement, the Commonwealth would file a nolle prosequi as to the most serious charge (sex trafficking), and the defendant would plead guilty to the remaining counts.  The parties jointly agreed to recommend that the defendant be sentenced to from two to three years in prison on one charge (deriving support from prostitution), followed by a probationary term of two years on the remaining counts (conspiracy and money laundering).  Upon learning of the plea agreement, the court commenced a change of plea hearing.
            During the ensuing colloquy, the defendant was asked whether the Commonwealth's recitation of the facts that it would expect to prove at trial was substantially true.  The defendant responded, "Not wholly," and the judge proceeded to question her as to whether she admitted to the elements of the offenses to which she was pleading guilty.  During the ensuing exchange, the defendant repeatedly denied or equivocated when asked whether she knew that she had been sending women on dates to engage in sexual activities, even after being given an opportunity to confer with her attorney.
            After asking one last time whether the defendant acknowledged that she had arranged for her employees to go on dates knowing that they would be providing sexual services for money, the judge followed up with, "I think we're going to proceed to trial," and later added, "I can tell that throughout the course of this proceeding that you [i.e., the defendant] are very ambivalent about offering your guilty pleas."  In an apparent effort to salvage the plea colloquy, the Commonwealth offered to file a nolle prosequi as to the conspiracy charge.  The trial judge gave the defendant an opportunity to confer with her attorney as to the Commonwealth's offer.  After a five-minute recess, however, defense counsel reported, "There has to be a trial."[2]
            When the jury was sworn two days later, the trial judge gave them preliminary instructions on the elements of the crimes at issue.  As part of that instruction, the judge explained that the crime of sex trafficking requires proof beyond a reasonable doubt that the defendant "caused or enabled an alleged victim to engage in commercial sexual activity," and that she did so knowingly.  In explaining the first element, the judge stated that "[t]he Commonwealth does not have to prove that [the defendant] used coercion or force to compel an alleged victim to engage in commercial . . . sexual activity, or that any alleged victim was an unwilling participant in that activity."
            Defense counsel proceeded to give an opening statement in which he conceded that the defendant had knowingly arranged for her employees to have sex with men for money, but he invited the jury to consider factors unrelated to the legal elements of the charged crimes during their deliberations.  Counsel emphasized that the defendant did not run her business in an exploitative fashion like a traditional "pimp" and did not use force or coercion on any of her employees.  Defense counsel alluded to the recent United States Supreme Court decision ruling that there is no constitutional right to abortion, see Dobbs v. Jackson Women's Health Org., 597 U.S. 215 (2022), noted that other states had passed laws in response to that decision, and implored the jury to "respect the decision of [the defendant] to have a woman in control of her own body."  Defense counsel also emphasized that "not a single one" of the men who paid for sex had been similarly charged, and he finished his opening statement by stating:  "But I guess that's the way it is.  The woman gets the wrong end of the stick, and . . . I submit to you that says an awful lot about this prosecution."[3]
            After the jury were excused, the Commonwealth moved for a mistrial, over the defendant's objection, on the basis of defense counsel's improper opening remarks.  The trial judge heard argument from both parties and took a brief recess to consider the matter.  When the court reconvened, the judge opted against declaring a mistrial, choosing instead to issue a forceful curative instruction to the jury.  The judge noted, however, that "there is certainly a strong argument that there's a manifest necessity to protect the Commonwealth's interests here based on that opening," and the judge clarified that "we're going to proceed [with the curative instruction] and see where that takes us[,] with the remaining possibility that I will determine that a mistrial is unavoidable as a consequence of that opening."  Thereafter, the judge issued a curative instruction in which he pointedly informed the jury that none of defense counsel's improper arguments constituted legally permissible defenses to the crimes charged.
            After the judge issued his curative instruction, the Commonwealth called three witnesses who had worked for the defendant's escort service.  On cross-examination, defense counsel principally focused on eliciting information that the witnesses engaged in sexual services voluntarily, without force or coercion by the defendant, and that the defendant took various steps to protect the escorts on their dates.
            Before the court recessed for the day, the trial judge expressed concern that any conviction in the case could result in a viable claim of ineffective assistance of counsel.  The judge observed that while he had "no doubt that [defense counsel's] opening statement was a matter of studied and strategic choice," it had effectively conceded the defendant's guilt and had invited a "blistering corrective instruction" to the jury.  The judge invited the attorneys to consider the ineffective assistance of counsel issue while the court was in recess over the weekend.
            On the following Monday, the Commonwealth renewed its motion for a mistrial, and the trial judge heard further argument from the parties.  Thereafter, the judge learned that defense counsel had not previewed his improper opening statement for the defendant.  The judge stated his belief that defense counsel's failure to consult with the defendant would create a meritorious claim of ineffective assistance of counsel and asked whether the defendant would prefer to continue on with the trial, in light of defense counsel's improper opening and the judge's curative instruction.  After a fifteen-minute recess, during which the defendant conferred with her attorney, the defendant stated (through counsel) that she did not know what decision she should make.  The trial judge asked defense counsel what viable defense strategy he intended to pursue going forward.  Defense counsel asserted that he would argue that there was insufficient evidence of the defendant's knowledge.  When the trial judge pointed out that defense counsel had already conceded the defendant's knowledge in his opening statement, and asked whether he recognized that his opening "directly undercut that defense strategy," defense counsel simply stated, "I don't concede that."
            The trial judge subsequently chose to declare a mistrial, concluding that any resulting conviction would "almost surely" be overturned on appeal due to ineffective assistance of counsel, given defense counsel's failure to consult with the defendant on his improper opening statement.  He further explained that he had been "very close to declaring a mistrial" even before learning of defense counsel's failure to consult with the defendant, and that learning of defense counsel's lack of consultation "pushed the ineffective assistance of counsel issue over the manifest necessity threshold."
            The defendant (represented by new counsel) subsequently filed a motion to dismiss the indictments on double jeopardy grounds, arguing that the declaration of a mistrial was unwarranted.  In a detailed twenty-four-page decision, the trial judge denied the motion.  The defendant then filed the instant petition seeking to challenge the denial of her motion.  That petition was denied, and this appeal followed.
            Discussion.  On appeal, we review the judgment of the single justice only for a clear error of law or abuse of discretion.  See Daniels v. Commonwealth, 441 Mass. 1017, 1017 (2004).  Where, as here, the defendant argues that her retrial is barred by principles of double jeopardy,[4] the question before us is, "as it was before the single justice, . . . whether the petitioner has shown an abuse of discretion by the trial judge in declaring a mistrial" over the defendant's objection, on the basis of manifest necessity.  Fuentes v. Commonwealth, 448 Mass. 1017, 1018 (2007).  In order to make this determination, we assess "whether the [trial] judge carefully explored alternatives to a mistrial, and whether counsel were given full opportunity to be heard" (quotations and citations omitted).  Read v. Commonwealth, 495 Mass. 312, 319 (2025).
            Here, it is readily apparent that the trial judge thoughtfully considered the arguments of counsel, as well as the available alternatives, before declaring a mistrial.  Despite defense counsel providing what, in the words of the trial judge, "was perhaps the most egregious pitch for [jury] nullification the court had ever heard," the judge did not immediately declare a mistrial.  Rather, he gave both parties multiple opportunities to be heard on the Commonwealth's request for a mistrial.  The judge also considered the available alternatives and, indeed, initially concluded that one such option -- a forceful curative instruction to the jury -- provided a viable alternative to declaring a mistrial.  Even after the trial judge raised concerns about the constitutional ineffectiveness of trial counsel's performance, the judge solicited opinions from both parties before deciding whether those concerns necessitated a mistrial.  He went so far as to ask the defendant whether she would prefer to continue on with the trial, given defense counsel's improper opening statement and the judge's forceful curative instruction, and he provided the defendant with a further opportunity to confer with her attorney.  It was only after the defendant indicated that she did not know how she wanted to proceed, and defense counsel failed to plausibly explain what defense strategy remained available after his improper opening statement, that the court declared a mistrial.  Before doing so, and at every step in the proceedings, the court solicited arguments from both parties and thoughtfully considered their respective positions.
            The defendant argues that declaring a mistrial nonetheless remained improper, both because a judge cannot declare a mistrial on the basis that trial counsel was constitutionally ineffective, and because the judge erred in concluding that any resulting conviction would be reversed on appeal.  We have never squarely addressed whether the declaration of a mistrial may be premised on trial counsel's ineffectiveness.  However, in the highly unusual circumstances of this case, we conclude that it was not an abuse of discretion to do so here.
            Declaring a mistrial on the basis that any resulting conviction would be constitutionally infirm is not to be done lightly.  It rests on the assumption that a defendant will be convicted at the conclusion of trial, and "[i]t is a chancy business indeed for a judge, or anyone for that matter, to predict a verdict that a jury may return in a case," irrespective of counsel's performance.  Commonwealth v. Phetsaya, 40 Mass. App. Ct. 293, 299 (1996).  In Phetsaya, the Appeals Court considered a similar claim that a trial judge improperly declared a mistrial on the basis of ineffective assistance of counsel.  As the court observed, it is well-settled that a defendant is entitled to effective assistance of counsel, and that the failure to receive such assistance provides grounds for reversal on appeal.  See id.  That remains true even in cases of tactical or strategic decisions by trial counsel, if those decisions were "manifestly unreasonable when made" and deprived the defendant of "a substantial ground of defense" (quotations and citations omitted).  Commonwealth v. Evelyn, 470 Mass. 765, 771 n.10 (2015).  However, the Appeals Court did not have occasion to consider whether, or when, that rationale may also provide an appropriate basis for declaring a mistrial, given that the trial judge in Phetsaya had erred in deeming trial counsel ineffective.  See Phetsaya, supra at 299, 300 ("even if ineffectiveness of counsel might be a sufficient justification for the declaration of a mistrial under some circumstances, that rationale does not withstand scrutiny here," where none of factors cited by trial judge, either alone or in combination, constituted ineffective assistance). 
            Here, unlike in Phetsaya, the trial judge did not abuse his discretion in concluding that trial counsel's plainly inappropriate behavior constituted ineffective assistance of counsel.  Defense counsel resorted to a wholly improper opening statement, in which he conceded factual guilt and invited the jury to disregard the judge's instructions on the elements of sex trafficking.  Whether or not that decision was strategic,[5] it was manifestly unreasonable.  See Commonwealth v. Fernette, 398 Mass. 658, 670 n.23 (1986) ("We recognize that jurors may return verdicts which do not comport with the judge's instructions.  We do not accept the premise that jurors have a right to nullify the law on which they are instructed by the judge").  At the same time, by conceding that the defendant created an escort service for the express purpose of enabling her employees to perform sexual services for a fee, defense counsel deprived the defendant of a substantial ground of defense.  During her guilty plea colloquy, the defendant was extremely reticent to agree that she had knowingly arranged for her employees to engage in sexual activities with clients.  Further, as the Commonwealth conceded in its own opening statement, the jury was going to hear evidence that the defendant took steps to operate her escort service as an ostensibly legitimate business.  Thus, as the trial judge correctly observed, defense counsel's opening statement was not simply improper, but detrimental to the defendant's ability to pursue an available defense; by immediately conceding that the defendant knew her employees were engaged in commercial sex, and instead advocating for jury nullification, defense counsel not only invited "a strong judicial rebuke" and curative instruction, but also "likely fatally undercut[] any effective pursuit at trial of the one factual defense that appeared open to the defendant," i.e., that she was unaware that her employees were engaged in commercial sexual activities.
            Despite the detrimental impact of defense counsel's conduct, the defendant maintains that a mistrial was unnecessary given that she did not object to her own attorney's opening remarks and "chose to defer to counsel's expertise."  As an initial matter, it is somewhat misleading to characterize the defendant's silence as acquiescence.  The trial judge found that the defendant looked "dumbstruck in the aftermath of [defense counsel's] opening" and even appeared to have been crying.  And when the trial judge asked the defendant whether she wished to proceed, rather than have a mistrial declared, she simply stated (through counsel) that "she doesn't know what decision she wants to make and . . . said that that's why she hired [defense counsel]."
            In any event, the defendant's argument is misplaced, as she relies principally on case law concerning a client's autonomy to decide on a particular trial strategy pursued by defense counsel, rather than defense counsel's constitutional effectiveness in pursuing that strategy.  See McCoy v. Louisiana, 584 U.S. 414, 426 (2018) ("Because a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence"); Commonwealth v. Alemany, 488 Mass. 499, 521 n.14 (2021) ("a client's autonomy is an issue separate from counsel's competence").  Here, defense counsel not only failed to obtain the defendant's consent, but also pursued an opening statement that rendered his performance constitutionally ineffective.  Cf. Evelyn, 470 Mass. at 771 & n.10 ("Where a defense attorney's concession is manifestly unreasonable or where a defendant has not consented to that strategy, we have relied on posttrial claims of ineffective assistance of counsel as the remedy for a miscarriage of justice" [emphasis added]).  Contrast Florida v. Nixon, 543 U.S. 175, 192 (2004) (trial counsel is not ineffective per se for failing to obtain defendant's consent to pursue particular trial strategy, provided that counsel's strategy does not otherwise constitute ineffective assistance).
            In these circumstances, given defense counsel's improprieties and the absence of available alternatives, we cannot conclude that it was an abuse of discretion for the trial judge to declare a mistrial, or for the single justice to deny the defendant's request for extraordinary relief from the denial of her subsequent motion to dismiss.
Judgment affirmed.
            Anne Rousseve for the petitioner.
            Nicole Nixon, Assistant Attorney General (Jennifer L. Snook, Assistant Attorney General, also present) for the respondent.
footnotes

            [1] Although Elena Gaston commenced this action by filing a petition in the county court, for convenience, we shall refer to her as the "defendant." 
            [2] The indictment charging the defendant with conspiracy was subsequently severed from the other indictments and is not implicated by the instant appeal.
            [3] Defense counsel repeatedly made other, similarly improper comments throughout his opening statement:
"[S]he came up with this idea for a way that she could help other prostitutes, and at the same time make money doing so.  She created a safe zone for women who wanted to have sex for money, and something very important, [the defendant] believes every woman has control over her own body."
"You've probably heard the word pimp used.  [The defendant] was so far from being a pimp that it's difficult to even use her name and that word in one sentence.  Why wasn't she a pimp?  She didn't force any woman to have sex if she did not want to."
"If a woman called up and said I'm sorry, . . . I just got my period.  I'd rather not work tonight.  [The defendant's] response is, okay.  No problem.  Would a pimp do that?  The pimp just cared about the money.  That's all."
"Now when she formed [her business], it finally gave women who wanted to have sex consensually and voluntarily and get paid for it, have an opportunity to have a person to watch over them."
"[W]ithout any protection and someone watching over you, that's when women get sexually assaulted, and the violence comes out.  [The defendant] would ensure that there was never, ever violence as she operated her business."
"People go on Tinder to see if they want to have a meet with someone.  Is it possible that the man or the woman was really looking just to have sex?  My daughter told me that it's called a Tinder hook-up and that that means two people looking to get together, maybe have some drinks, and then have sex.  This is what [the defendant] was enabling, provided it was 100 percent consensual.  How is this different?  The only thing was, it was organized so that the woman and [the defendant] both benefited from this."
            [4] In the normal course, a defendant who has yet to be convicted is not entitled to an interlocutory appeal from a ruling of the trial court, but this court "recognize[s] a narrow exception to this general rule in the context of double jeopardy claims."  Read v. Commonwealth, 495 Mass. 312, 318 n.8 (2025).
            [5] As the trial judge observed, defense counsel "pointedly refused to provide any meaningful explanation for his actions, and . . . responded to the court's inquiries about them with uninformative generalities."  However, in the event that defense counsel's conduct was strategic, that would not make the declaration of a mistrial any less warranted, given the impropriety of his chosen strategy.  See Commonwealth v. Bryan, 476 Mass. 351, 359 (2017) ("It would be a reproach to the administration of justice if a defendant[,] through his counsel, could pollute the atmosphere of a trial and then turn this to his own advantage on appeal" [citations omitted]).