## COMMONWEALTH *vs.* COREY GLOVER.

Essex. February 7, 2011. - June 1, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Homicide. Self-Defense. Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Instructions to jury.

A Superior Court judge properly denied a criminal defendant's motion for a new trial on grounds of ineffective assistance of counsel, where, although trial counsel's decision at a murder trial to proceed solely on a theory of excessive use of force in self-defense deprived the defendant of an available, substantial ground of defense based on a theory of reasonable provocation, trial counsel's strategic decision was not manifestly unreasonable when made, in that it was reasonable to focus the jury on a theory that, if credited, would result in acquittal; it was not unreasonable to conclude that arguing both theories would have diminished the force of the claim of self-defense; and the evidence more strongly supported excessive use of force in self-defense than reasonable provocation [841-844]; further, even if trial counsel were ineffective for failing to request an instruction on reasonable provocation, no substantial risk of a miscarriage of justice arose from the absence of the instruction, given that the evidence of excessive use of force in self-defense, while itself meager, was stronger than the evidence of reasonable provocation [844-846].

INDICTMENT found and returned in the Superior Court Department on July 31, 1991.

Following review by the Appeals Court, 39 Mass. App. Ct. 1121 (1996), and 50 Mass. App. Ct. 1116 (2001), a second motion for a new trial, filed on February 25, 2009, was heard by *Richard E. Welch, III,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David Keighley* for the defendant.

*David F. O'Sullivan,* Assistant District Attorney, for the Commonwealth.

GANTS, J. On January 30, 1992, a jury convicted the defendant, Corey Glover, of murder in the second degree for the stab-

bing death of Forrest Hall.[1] In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed the conviction. *Commonwealth* v. *Glover*, 39 Mass. App. Ct. 1121, further appellate review denied, 422 Mass. 1106 (1996). The defendant filed a motion for a new trial on August 24, 1998, which was denied by a Superior Court judge who was not the trial judge. In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed. *Commonwealth* v. *Glover*, 50 Mass. App. Ct. 1116, further appellate review denied, 434 Mass. 1102 (2001). On February 25, 2009, the defendant filed a second motion for a new trial, and the same judge again denied the motion. The defendant appealed, and by a divided panel, the Appeals Court affirmed. *Commonwealth* v. *Glover*, 76 Mass. App. Ct. 799 (2010). We granted the defendant's application for further appellate review.

The issue on appeal is whether the defendant was denied effective assistance of counsel at trial because his defense counsel asked the judge not to instruct the jury on voluntary manslaughter based on reasonable provocation, even though the evidence permitted such an instruction. Stating that an instruction on reasonable provocation would be "counter productive" to his argument that the defendant acted in self-defense, defense counsel instead asked the judge to instruct the jury exclusively on self-defense and voluntary manslaughter based on excessive use of force in self-defense. We conclude that the defense attorney's strategic decision was not manifestly unreasonable and that there was no substantial risk of a miscarriage of justice. Therefore, we affirm the denial of the defendant's second motion for a new trial.[2]

*Evidence at trial.* Viewed in the light most favorable to the Commonwealth, the evidence at trial showed that the defendant and a companion, Marshall Flonory, robbed James Kallelis at knifepoint of a twelve-pack of beer, champagne, and eight dollars on Franklin Street in Lynn. Kallelis returned to the apartment he shared with Michael Bradley and reported the robbery

---

[1] The jury found the defendant not guilty of armed robbery.

[2] By concluding that the defendant's trial counsel was not ineffective, we also conclude that his appellate counsel was not ineffective for failing to raise this issue at the hearing on the first motion for a new trial. See *Breese* v. *Commonwealth*, 415 Mass. 249, 252 (1993).

to him. Bradley said that he might know who the robbers were and be able to recover the items. He and Kallelis then left the apartment and walked down Franklin Street. There they encountered the victim, Forrest Hall, a muscular, physically imposing man whom both Kallelis and Bradley knew. They told the victim about the robbery, and he agreed to "help them out." The victim asked Bradley whether he was carrying any weapons, noting that he was not. Bradley replied that he was not, and said, "Don't worry about it."

The three saw Flonory and the defendant, and Kallelis identified them as the persons who had robbed him. They approached the defendant and Flonory, standing about one foot away. The victim asked Flonory, "What's going on here?" The defendant then reached around the victim and grabbed Kallelis by the jacket. The victim put his left arm out between the defendant and Kallelis and said, "You don't have a problem with him. You deal with me." The victim then unzipped his jacket. In response, the defendant said, "Don't be reaching for nothing." The victim replied, "I'm not reaching for nothing."

While the victim resumed talking to Flonory, the defendant "was looking up and down Franklin Street," with a knife now in his right hand. Bradley saw the knife and reached up to grab the victim's shoulder in order to pull him back. Bradley then saw the defendant stab the victim once in the neck from the blind side as the victim's head was turned toward Flonory, and then step back. The victim put his hand to his neck as blood began "[s]hooting out." The victim died of a single stab wound below his left ear that severed his jugular vein and cut his carotid artery.

After the stabbing, the defendant and Flonory went back to Flonory's apartment on Franklin Street, where Flonory lived with his sister, Darlene Flonory (Darlene), who was dating the defendant. Darlene overheard Flonory say to the defendant, "You didn't have to do that, man. . . . You got too much Grove Hall in you."[3] Referring to the victim, Flonory told the defendant, "That was my friend, and . . . it wasn't like that." The defendant later admitted to Darlene that "he stabbed the guy in the neck." When she asked why there was no blood on him, he

---

[3]Grove Hall is a neighborhood in the Roxbury section of Boston.

explained that he jumped back "[s]o no blood would get on him," and he demonstrated that movement to her.

We also describe the evidence in the light most favorable to the defendant, because a trial judge must view the evidence in this light in determining whether a defendant is entitled to an instruction on voluntary manslaughter based on reasonable provocation. *Commonwealth* v. *Acevedo*, 446 Mass. 435, 443 (2006) (*Acevedo*). According to the defendant's testimony at trial, the events that led to the killing began not with a robbery, but with Flonory giving Kallelis some cocaine he kept for his personal use in return for Kallelis's wine and beer.[4] Flonory and the defendant returned to Flonory's apartment, and then left to make a telephone call at a laundromat. As they were returning to the apartment, "three guys had walked right up on [them]" so closely that "it was like almost a confrontation." The defendant did not recognize them.

The victim said to the defendant, "Hey, let me get a twenty." The defendant replied that he did not sell drugs. The victim asked, "Do you know who I am?" and the defendant replied, "No." The victim beat on his chest and yelled in the defendant's face, "My name is Wimpy and I run Lynn."[5] The defendant did not reply and the victim asked, "Do you think I'm bullshitting?" The victim then zipped down his coat, reached in his coat pocket, and walked toward the defendant. The defendant pulled out his knife and stabbed him. Standing only about five feet, nine inches tall (the victim was six feet tall), the defendant felt nervous as he backed away from the victim and, without thinking or looking, just swung the knife. Though he did not see any object in the victim's hand, he saw the victim pull something out of his jacket and feared the victim would hurt him.

Darlene testified that the defendant appeared "frightened" and "scared" when he spoke to Flonory at the apartment. She heard the defendant explain, "Well, better him than me. He was

---

[4]The defendant's testimony regarding the exchange of cocaine for alcohol was corroborated by Russell Warwick, who testified that Kallelis told him when they were both in jail that he had gotten cocaine from the defendant's friend on the night of the killing.

[5]There was evidence at trial that the victim's nickname was "Wimpy."

reaching." Darlene said the defendant told Flonory that "he was, basically, just trying to defend himself."

*Jury instructions.* Before closing arguments, defense counsel asked the judge to instruct the jury on voluntary manslaughter on two theories, reasonable provocation and excessive use of force in self-defense, and submitted proposed written instructions on both theories. In his closing argument, he argued that the defendant should be acquitted because the defendant acted in self-defense, and made no reference to voluntary manslaughter. The next day, after the judge asked defense counsel whether he wanted an instruction on voluntary manslaughter based on both reasonable provocation and excessive use of force in self-defense, defense counsel replied, "Upon consideration, I am asking the court not to instruct on manslaughter on a theory of heat [of] passion. In a final analysis, it may be counter productive to my argument that the defendant acted in self-defense." The judge instructed the jury as to voluntary manslaughter solely on the theory of excessive use of force in self-defense.[6]

After a period of deliberation, the jury returned with a note that read: "Regarding definition of: One, self-defense. Two, manslaughter. Three, malice aforethought . . . ." The judge informed counsel that he was inclined to instruct the jury in response to the question on manslaughter that there are only two elements of manslaughter: (1) the defendant inflicted an

---

[6]The judge instructed the jury that, if the Commonwealth failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, "you must find the defendant not guilty." However, in instructing the jury on voluntary manslaughter, the judge then stated, "If the Commonwealth fails to prove beyond a reasonable doubt that the defendant did not act in self-defense but the Commonwealth does prove beyond a reasonable doubt that the defendant used excessive force in defending himself in the light of all of the circumstances and that death resulted from the use of excessive force, then you may find the defendant guilty of manslaughter." The judge here misspoke and thereby erred — if the Commonwealth fails to prove beyond a reasonable doubt that the defendant did not act in self-defense, the jury must acquit. See *Commonwealth* v. *Glacken*, 451 Mass. 163, 167 (2008). The defendant did not object to this instruction and does not argue the issue on appeal. Because this is an isolated misstatement and the judge told the jury six times that they must acquit if they found that the Commonwealth failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, we do not conclude that a substantial risk of a miscarriage of justice arose from this error. Moreover, this error would have consequence only if the jury had found the defendant guilty of voluntary manslaughter, which they did not.

injury on the victim from which he died, and (2) the defendant injured the victim as the result of using excessive force in self-defense. Defense counsel asserted again that he did not seek an instruction on voluntary manslaughter based on reasonable provocation.[7] As a result, the judge told the jury that there were "a lot of ways to commit manslaughter" but "[w]e are only concerned with one way in this case, and I am not going to discuss other ways." The judge later informed the jury that the Commonwealth proves voluntary manslaughter if it proves two elements beyond a reasonable doubt, defining the second element as "the defendant injured [the victim] as a result of using excessive force in self-defense."

*Discussion.* Voluntary manslaughter is an unlawful killing without malice that arises from "sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense." *Acevedo, supra* at 443, quoting *Commonwealth* v. *Carrion*, 407 Mass. 263, 267 (1990). "Reasonable provocation is provocation that 'would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint.' " *Acevedo, supra*, quoting *Commonwealth* v. *Walden*, 380 Mass. 724, 728 (1980). "A jury instruction on reasonable provocation is warranted 'if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool.' " *Acevedo, supra*, quoting *Commonwealth* v. *Andrade*, 422 Mass. 236, 237 (1996). "The defendant's actions must be 'both objectively and subjectively reasonable. That is, the jury must be able to infer that a reasonable person would have become sufficiently provoked and would not have "cooled off" by the time of the homicide, and that in fact a defendant was provoked and did not cool off.' " *Acevedo, supra*, quoting *Commonwealth* v. *Groome*, 435 Mass. 201, 220 (2001).

Voluntary manslaughter on a theory of reasonable provocation is closely related to voluntary manslaughter on a theory of

---

[7]Defense counsel told the judge, "I think when I have come so far as saying I don't want heat [of] passion, I have to go all the way. So I view we are still talking excessive force and self-defense."

excessive use of force in self-defense. See *Commonwealth* v. *Walker*, 443 Mass. 213, 221-222 (2005). Because a defendant is entitled to an instruction on the excessive use of force in self-defense only where there is some evidence that the defendant was entitled to use some force in self-defense, see *Commonwealth* v. *Hinds*, 457 Mass. 83, 91 (2010), the victim's conduct that justifies the use of some force in self-defense often will provide the reasonable provocation that causes a defendant to lose his self-control in the heat of passion. See *Commonwealth* v. *Lapage*, 435 Mass. 480, 486 & n.7 (2001).

But the two theories are also distinct, and evidence may support one but not the other. *Acevedo, supra* at 446. A reasonable opportunity to retreat may defeat a theory of excessive use of force in self-defense because the opportunity to retreat means that no use of force was reasonable, but the victim's conduct that caused the defendant to believe he was in imminent danger may be sufficient to support a theory of reasonable provocation. See *id.* Conversely, a defendant's cool calculation in the face of danger may defeat a theory of reasonable provocation but may still permit a theory of excessive use of force in self-defense. See *Commonwealth* v. *Colon*, 449 Mass. 207, 222, cert. denied, 552 U.S. 1079 (2007) (where defendant claims to act rationally in self-defense, based on "calculus of survival," he undercuts his contention that he acted in heat of passion on reasonable provocation). Because the theories are distinct, a defendant is entitled to jury instructions on voluntary manslaughter based on both theories where the evidence supports them. *Acevedo, supra* at 445-446. An instruction on one theory does not cure the failure to instruct on the other, or eliminate the risk of prejudice. *Id.*

A defendant is denied his constitutional right to the effective assistance of counsel where the conduct of his attorney falls "measurably below that which might be expected from an ordinary fallible lawyer" and thereby "likely deprived the defendant of an otherwise available, substantial ground of defence." *Acevedo, supra* at 442, quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Here, where the Commonwealth concedes that the evidence permitted a jury instruction on both theories, defense counsel's decision to proceed only on a theory of excessive use of force in self-defense deprived the defendant of an available, substantial ground of defense

based on a theory of reasonable provocation. See *Acevedo, supra* at 445-446. The determination whether the defendant was denied the effective assistance of counsel therefore rests solely on whether defense counsel's strategic decision to proceed on one theory of voluntary manslaughter and forgo another was " 'manifestly unreasonable' when made." *Acevedo, supra* at 446, quoting *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). See *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998).

"Only 'strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent' are manifestly unreasonable." *Commonwealth* v. *Pillai*, 445 Mass. 175, 186-187 (2005), quoting *Commonwealth* v. *Levia*, 385 Mass. 345, 353 (1982). In making this determination, we evaluate the decision at the time it was made, and make "every effort . . . to eliminate the distorting effects of hindsight." *Commonwealth* v. *Fenton F.*, 442 Mass. 31, 38 (2004), quoting *Strickland* v. *Washington*, 466 U.S. 668, 689 (1984). The deference we give to defense counsel's strategic judgment in determining whether it was manifestly unreasonable reflects the strong presumption that counsel knows best how to defend a client. See *Commonwealth* v. *Florentino*, 396 Mass. 689, 690 (1986), quoting *Strickland* v. *Washington, supra* ("Judicial scrutiny of counsel's performance must be highly deferential, 'indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' ").[8]

Here, reasonable defense counsel may have chosen to request a jury instruction on voluntary manslaughter based on reasonable provocation, where it was neither inconsistent with his

---

[8]However, where defense counsel's strategic decision not to request an instruction on a lesser included offense, or one theory of a lesser included offense, is manifestly unreasonable, a judge may need to exercise the inherent authority to give the instruction sua sponte to protect the case from the risk of reversal on appeal. See *Commonwealth* v. *Berry*, 431 Mass. 326, 338 (2000) ("when the evidence would warrant a conviction of the lesser included offense and the element differentiating the offenses is in dispute, the judge may give the instruction despite objection by both the Commonwealth and the defendant"). We note that a defendant cannot control the decision to instruct on a lesser included offense where the evidence warrants such an instruction and either the Commonwealth requests the instruction or the judge chooses to give it over the objection of all parties. See *id.* at 337-338. See also *Commonwealth* v. *Woodward*, 427 Mass. 659, 663 & n.7 (1998).

pursuit of an acquittal on grounds of self-defense nor inconsistent with a verdict of the lesser included offense of voluntary manslaughter based on excessive use of force in self-defense. For three reasons, however, it was not manifestly unreasonable for defense counsel to proceed solely on a theory of self-defense. First, if the jury credited the defendant's claim of self-defense, he would be acquitted. It was therefore reasonable to focus the jury on that theory rather than reasonable provocation, which at best could yield a conviction of voluntary manslaughter. See *Commonwealth* v. *Roberts*, 407 Mass. 731, 737-739 (1990) (affirming convictions where defense counsel did not request instruction on lesser included offense and pursued strategy of presenting "an all-or-nothing choice to the jury").

Second, while defense counsel could have argued both theories in the alternative, it was not manifestly unreasonable to conclude that doing so would have diminished the force of his claim of self-defense. See *Commonwealth* v. *Pagan*, 35 Mass. App. Ct. 788, 791 (1994) (not ineffective to eschew manslaughter instruction in case involving murder in second degree and arson, where such alternative might "vitiate the primary theme of the defense" and "sap the force" of claim that she did not set fire).

Third, the evidence more strongly supported excessive use of force in self-defense than reasonable provocation. The defendant's statements shortly after the killing claimed self-defense, not that his fear eclipsed his capacity for reflection or restraint. The defendant told Darlene, "[B]etter him than me," and "I figured [I'd] get him before they got me." In addition, the absence of blood on the defendant's clothing, which the defendant explained resulted from his moving back immediately after he stabbed the victim, reflects a presence of mind that is inconsistent with the emotional state required under a theory of reasonable provocation. See *Commonwealth* v. *Sirois*, 437 Mass. 845, 853-854 & n.9 (2002) (defendant's statement and conduct after shooting gave no indication that victim's arguably provocative act created passion, anger, fear, fright, or nervous excitement).

Because we conclude that defense counsel's strategic judgment in this case was not manifestly unreasonable when made, and therefore that the defendant was not denied the effective assistance of counsel, we need not reach the issue whether a

substantial risk of a miscarriage of justice arose from ineffective assistance. Nonetheless, we conclude that, even if counsel were ineffective for failing to request an instruction on reasonable provocation, no substantial risk of a miscarriage of justice resulted from the absence of the instruction. "A substantial risk of a miscarriage exists 'if we have a serious doubt whether the result of the trial might have been different had the error not been made.' " *Acevedo, supra* at 450, quoting *Commonwealth* v. *LeFave,* 430 Mass. 169, 174 (1999). We have no serious doubt here, because the evidence of excessive use of force in self-defense, while itself meager, was stronger than the evidence of reasonable provocation.

The defendant contends that this case is controlled by our decision in *Acevedo, supra* at 451, where we concluded that it was manifestly unreasonable for defense counsel to have failed to request a jury instruction on reasonable provocation, that the failure deprived the defendant of an available, substantial ground of defense, and that the absence of such an instruction created a substantial risk of a miscarriage of justice. We conclude that this case is distinguishable from *Acevedo* on at least two grounds. First, in *Acevedo,* defense counsel stated in an affidavit that he could not recall any tactical reason why he did not request an instruction on reasonable provocation, or think of any reason why he would not make such a request. *Id.* at 440. Therefore, defense counsel made no strategic or tactical decision to which deference was entitled. Here, defense counsel made such a strategic decision and stated his reason for it on the record, which we do not conclude was manifestly unreasonable in the circumstances. While a defense counsel who makes a deliberate strategic decision may be ineffective where the decision was manifestly unreasonable, defense counsel is more likely to be ineffective where no strategic judgment was exercised.

Second, in *Acevedo,* the jury on the third day of deliberations asked the judge to "define all mitigating circumstances which should be considered in deciding malice" and specifically asked if there were mitigating circumstances other than excessive use of force in self-defense that "would eliminate" malice. *Id.* at 440 & n.10. After conferring with counsel, the judge instructed the jury, without objection, that there were no mitigating

circumstances to consider other than excessive use of force in self-defense. *Id.* at 440. We concluded that "it plainly was unreasonable" for defense counsel not to request an instruction on reasonable provocation after the jury submitted a question that invited such an instruction. *Id.* at 450. Here, the jury's generic question requesting definitions of self-defense, manslaughter, and malice aforethought did not suggest that they were looking to explore mitigating circumstances other than excessive use of force in self-defense. Therefore, the question neither gave any cause for defense counsel to revisit his strategic judgment to forgo instruction on a theory of reasonable provocation nor suggested that a substantial risk of a miscarriage of justice would arise from the absence of such an instruction.

*Conclusion.* We review a denial of a defendant's motion for a new trial, whether framed as a claim of ineffective assistance of counsel or as a claim of error, solely to determine whether there was a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Russell*, 439 Mass. 340, 345 (2003). Because we conclude that the defendant was not denied effective assistance of counsel and that there was no substantial risk of a miscarriage of justice, we affirm the denial of his motion for a new trial.

*So ordered.*