After a jury trial, the defendant, Shayna Fernandez, was convicted of manslaughter, see G. L. c. 265, § 13, and motor vehicle homicide while under the influence of alcohol, see G. L. c. 90, § 24G(a ), in connection with the deaths of Francis O'Hanley and Joseph Coppola. Following her convictions, she filed a motion for new trial, which was denied. She appeals from the judgments and from the order denying her motion for new trial. We affirm.
Background. We briefly summarize the facts as the jury could have found them, leaving some details for recitation as relevant to each of the issues discussed infra. On the morning of June 11, 2011, the victims were traveling northbound on Route 93 in Andover in a Chevrolet Blazer sport utility vehicle, which was driven by O'Hanley. Coppola was in the front passenger seat, and O'Hanley's son was in the back seat. The three were headed to New Hampshire for a fishing trip; a small boat was on a trailer hitched to the Blazer.
The defendant was driving a blue vehicle, traveling at a high rate of speed. Several witnesses commented on the alarming manner with which the defendant operated her vehicle. One eyewitness stated that the defendant was driving "like a bat out of hell"; he described that her blue vehicle merged onto Route 93 directly into the middle lane, then went to the left lane before it "darted back in right away to the middle lane and then, poof, out of sight." Another witness estimated that the defendant's vehicle was going 100 miles per hour as she passed his vehicle, which was traveling at seventy miles per hour. He recalled commenting on the defendant's speed: "Holy shit. That was fast." A different witness also estimated that the defendant's vehicle was going "[a] hundred or so" miles per hour. Yet another witness estimated the defendant's vehicle was traveling "at least 85" miles per hour when it passed her; as she saw the defendant's vehicle fast approaching, she recalled saying, "[O]h, my God, this car is going very fast."
As the defendant rapidly gained on the Blazer, the Blazer was either in the middle lane or possibly changing into the left lane. The defendant's vehicle got "very close" to the Blazer and then struck it from behind, thereafter swerving into and through the left lane and onto the grassy median. She then returned to left lane, striking the Blazer again and causing it to roll over and come to a stop on the left side of the highway near the guardrail.[2] O'Hanley and Coppola were ejected from the Blazer and died. The defendant's vehicle continued across three lanes before coming to a rest on the right side of the highway in the breakdown lane.
Trooper R. Daniel O'Brien arrived at the scene and approached the defendant, who was crying and standing near the guardrail by O'Hanley's body. The defendant stated: "Oh, God, I killed them all."[3] The trooper "intermittently" detected the odor of alcohol on the defendant as he interviewed her; one witness noticed "a very strong odor of alcohol on her breath." The defendant admitted to the trooper that she had "a few beers or two beers" the previous night. After subjecting the defendant to field sobriety tests, smelling alcohol on the defendant's breath, and noticing that the defendant's eyes were red, bloodshot, and glassy, the trooper opined that she was intoxicated and arrested her. During the booking process, the trooper detected that "her speech was slurred." The defendant, after being informed of her rights, consented to a breathalyzer examination. Two readings were taken, indicating a .13 percent blood alcohol level and a .12 percent blood alcohol level.
At trial, the defense was that O'Hanley had caused the accident because he was under the influence of marijuana and failed to signal before starting to change lanes as he moved the Blazer from the middle lane to the left lane of the highway. In support of this defense, trial counsel called an emergency department physician who opined that O'Hanley had recently used marijuana. The physician based his opinion on O'Hanley's toxicology report, which showed that he had twenty-seven nanograms per milliliter of blood of tetrahydrocannabinol (THC) in his body. The physician opined that this level of THC may have impaired O'Hanley's driving abilities. In addition, trial counsel disputed that the defendant's alcohol consumption had impaired her driving. Trial counsel elicited testimony, from both the Commonwealth's breathalyzer expert and the defendant's own expert, regarding certain methodological and calibration flaws of the breathalyzer machine used to measure the defendant's blood alcohol content, calling into question the reliability of the defendant's breathalyzer results.
As set forth supra, the defendant was convicted of manslaughter and motor vehicle homicide while under the influence of alcohol; the jury found her not guilty of two counts of motor vehicle homicide with a blood alcohol content of .08 percent or greater.
Discussion. 1. The prosecutor's closing argument. On appeal, the defendant maintains that several remarks by the prosecutor in closing argument were improper. Trial counsel did not object; accordingly, our review is limited to determining whether any error raises a substantial risk of a miscarriage of justice. Commonwealth v. Stewart, 411 Mass. 345, 356-357 (1991).
Having reviewed each of the remarks in the context of the prosecutor's closing argument as a whole and together with the trial judge's jury instructions, see Commonwealth v. Tuitt, 393 Mass. 801, 811 (1985), only two of them warrant discussion. First, the prosecutor improperly disparaged the defendant's medical expert by stating that, because he was paid $237 per hour, he was "an expert at making a quick buck." While "[e]vidence of an expert's billing rate is admissible as evidence of bias, and it is appropriate to remind the jury that an expert was retained by the defendant," Commonwealth v. Bishop, 461 Mass. 586, 598 (2012), it is improper to characterize an expert as a "hired gun" whose testimony was "bought" where (as here) there is no evidence that the expert was paid more than his customary fee. Commonwealth v. Shelley, 374 Mass. 466, 469-470 (1978). Nonetheless, in the context of the prosecutor's entire argument and the trial judge's instructions, including his instruction that closing argument was not evidence,[4] we are confident that the jury took "the criticized argument with a 'grain of salt.' " Commonwealth v. Benson, 419 Mass. 114, 120 (1994), quoting from Commonwealth v. Wallace, 417 Mass. 126, 134 (1994). The remark, while improper, did not create a substantial risk of a miscarriage of justice.[5]
Second, the prosecutor vouched for the accuracy and reliability of the breathalyzer machine by reference to the use of the same apparatus by "every single law enforcement department in the Commonwealth of Massachusetts and the State Police." This was improper. See Commonwealth v. Grandison, 433 Mass. 135, 141-142 (2001). However, the jury plainly were not swayed by the prosecutor's improper statement as evidenced by the fact that the defendant was acquitted of the breathalyzer counts. See Commonwealth v. McCravy, 430 Mass. 758, 765-766 (2000). Furthermore, the trial judge properly instructed the jury that closing arguments are not evidence. Commonwealth v. Watkins, 425 Mass. 830, 840 (1997). Moreover, "[t]he absence of objection by defense counsel during or after argument may provide some guidance as to whether a particular argument was prejudicial in the circumstances." Grandison, supra at 142, quoting from Commonwealth v. Kozec, 399 Mass. 514, 518 n.8 (1987). In the circumstances, this error did not give rise to a substantial risk of a miscarriage of justice.
2. Jury instructions. The defendant next contends that the trial judge erred in certain of his jury instructions. Because trial counsel did not object to the alleged errors, "our review ... is limited to whether the instruction was erroneous and, if so, whether it created a substantial risk of a miscarriage of justice." Commonwealth v. Stewart-Johnson, 78 Mass. App. Ct. 592, 598 (2011).
a. Accident defense. The defendant maintains that the trial judge erred by not giving an accident defense instruction. Commonwealth v. Figueroa, 56 Mass. App. Ct. 641, 650 (2002) ("pure" accident refers to "an unintentional event occurring through inadvertence, mistake, or negligence"). To begin, the defendant acknowledges that accident is not a defense to motor vehicle homicide. See Commonwealth v. Doyle, 73 Mass. App. Ct. 304, 309 (2008).
Pure accident, however, can be a defense to involuntary manslaughter, which requires proof of "wanton and reckless" conduct. Figueroa, supra. Where the defendant's conduct is "inadverten[t], mistake[n], or negligen[t]," a pure accident defense may be proper. Ibid. In assessing whether a pure accident instruction is warranted, we view the evidence in the light most favorable to the defendant. Id. at 651.
Here, the instruction was not warranted. Trial counsel did not seek an accident instruction.[6] Such an instruction would have been at odds with the trial strategy that the defendant was not negligent-the defense was that the defendant was not impaired, O'Hanley was impaired, and the incident was caused by his failure to signal a lane change. See Commonwealth v. Arias, 84 Mass. App. Ct. 454, 468 (2013). The evidence was that the defendant drove, after having at least two beers, in such a manner (including driving with excessive speed and weaving in and out of lanes) that it caused alarm to numerous drivers that morning. See, e.g., Commonwealth v. Filoma, 79 Mass. App. Ct. 16, 24 (2011) (no accident instruction warranted where defendant accelerated backward and forward at night on narrow street); Commonwealth v. Moore, 92 Mass. App. Ct. 40, 42 (2017) (accident instruction not warranted where defendant traveled at "high rate of speed going in and out of traffic"). In the circumstances, the trial judge did not err in declining to instruct the jury sua sponte on pure accident.
b. Exceeding speed limit alone and alcohol consumption alone instructions. The defendant also faults the trial judge for not instructing the jury that neither exceeding the speed limit alone nor driving while under the influence alone is not conclusive evidence of negligence or recklessness. The trial judge properly instructed the jury to consider not only the defendant's speed, but also the manner in which she operated her vehicle, her physical condition, her control of her vehicle, the road conditions, the time of day, weather conditions, and "any other factor[s] that you think are relevant." Commonwealth v. Campbell, 394 Mass. 77, 83 n.5 (1985). He further instructed the jury to consider not only whether the defendant had consumed alcohol, but whether her ability to drive safely was diminished by alcohol. See Commonwealth v. Luiz, 28 Mass. App. Ct. 973, 973-974 (1990). There was no error in the instructions.[7]
3. Motion for a new trial. The defendant argues that the motion judge (who was not the trial judge) erred in denying her motion for a new trial. We review the order denying a motion for a new trial to determine whether there has been an abuse of discretion or other error of law. Commonwealth v. DeJesus, 468 Mass. 174, 178 (2014).
a. Ineffective assistance. The defendant maintains that a new trial was required because trial counsel provided constitutionally ineffective assistance. We review a claim of ineffective assistance under the familiar two-prong test: (1) "whether there has been serious incompetency, inefficiency, or inattention of counsel-behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer" and (2) if so, "whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
The defendant contends that trial counsel was ineffective for failing to introduce expert testimony on human factors. In support of her motion, the defendant submitted the affidavit of a human factors expert. Much of the information in the expert's affidavit was duplicative of the testimony of the defendant's accident reconstruction expert, and other information was within the ordinary ken of the average juror.[8] Failure to consult with such an expert was not conduct below that of the ordinary fallible lawyer and did not deprive the defendant of a substantial ground of defense. See Commonwealth v. Aspen, 85 Mass. App. Ct. 278, 280-281 (2014).
The defendant also maintains that trial counsel was ineffective for failing to request a lesser included offense instruction. As the defendant acknowledges, the trial judge specifically asked trial counsel whether a lesser included offense instruction was desired. Trial counsel made a strategic decision not to seek such an instruction. The trial judge then engaged in a colloquy with the defendant who confirmed, after a break to consult with her family, that she did not want the instruction. Given this deliberate tactical decision, "the defendant must demonstrate that ... counsel's tactical judgment was manifestly unreasonable." Commonwealth v. Finstein, 426 Mass. 200, 203 (1997). We agree with the motion judge that the defendant failed to make the requisite showing; in the circumstances, we cannot say that it was manifestly unreasonable to pursue an "all-or-nothing" defense. Commonwealth v. Glover, 459 Mass. 836, 844 (2011) (citation omitted).[9]
b. New evidence. The defendant argues that a new trial was warranted based on newly discovered information regarding a lack of written policies and procedures concerning the annual certification of the new model breathalyzer machine.[10] Again, we agree with the motion judge's well-reasoned decision that the defendant has not shown "a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." Commonwealth v. Moore, 408 Mass. 117, 126 (1990) (citation omitted). The jury acquitted the defendant of the breathalyzer counts, plainly agreeing with the defendant's theory that the breathalyzer was not reliable. The trial judge instructed that the jury were to disregard the breathalyzer information if they found the breathalyzer to be unreliable. We assume the jury followed the trial judge's instruction. Commonwealth v. Durand, 475 Mass. 657, 668-669 (2016). The defendant's speculation that the jury nonetheless relied on the breathalyzer readings in connection with the motor vehicle homicide counts does not meet the burden to show a substantial risk that the jury would have reached a different conclusion. Here, the evidence (even excluding the breathalyzer readings) was substantial that the defendant had been drinking, driving erratically and dangerously, smelled of alcohol, had glassy, red, bloodshot eyes, and slurred her speech.[11]
Judgments affirmed.
Order denying motion for new trial affirmed.

The Commonwealth's accident reconstruction expert opined that the defendant's blue vehicle was traveling so fast that, despite losing speed when it swerved into the grassy median, it was able to catch the Blazer and strike it again.

Other witnesses testified that the defendant also stated: "Jesus, please don't let these people die" and "I'm so sorry. I [am] so sorry. I cannot live with myself."

Commonwealth v. Watkins, 425 Mass. 830, 840 (1997) (jury presumed to follow instructions).

The defendant also argues that the prosecutor's reference to the amount of THC in O'Hanley's body-twenty-seven nanograms per milliliter-as a "trace amount" was error because there was expert testimony that the THC may have impaired O'Hanley. We disagree. The prosecutor's statement is "little more than enthusiastic rhetoric, strong advocacy, and excusable hyperbole." Commonwealth v. Costa, 414 Mass. 618, 629 (1993). The same is true of the prosecutor's statements about the defendant's accountability. See Commonwealth v. Barbosa, 477 Mass. 658, 670-671 (2017).

The Commonwealth filed a motion in limine to preclude a defense of accident. Trial counsel and the trial judge had the following exchange:
Trial Counsel : "May I suggest that we just wait on this and see how the facts come out?"
Judge : "Sure. And propose some instruction because the defense of accident seems inapplicable in this situation. You're not asking for an instruction on the defense of accident. You're asking for an explanation of the colloquial concept of an accident separate and distinct from negligent conduct."
Trial Counsel : "Exactly."
At the charge conference, trial counsel did not ask for an accident instruction and did not object to the instructions after they were provided to the jury.

The defendant also claims that the evidence was insufficient for the jury to conclude that the defendant caused the accident. Viewing the evidence in the light most favorable to the Commonwealth, Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the evidence showed the defendant was intoxicated, driving at a speed of about 100 miles per hour and dangerously switching lanes. As she swiftly bore down on the Blazer, she tried to switch lanes and rear-ended the trailer, lost control of her vehicle, swerved back and again hit the Blazer, which flipped over. The evidence of causation was more than sufficient.

For example, the expert's affidavit explains that a driver can use a side mirror to assess whether a lane change can be made safely and to gather information on how fast a vehicle is approaching. Compare Commonwealth v. Giontzis, 47 Mass. App. Ct. 450, 461 (1999) (lay opinions as to speed are competent and admissible).

The defendant also faults trial counsel for failing to seek an instruction on both (i) exceeding the speed limit alone and (ii) drinking alcohol alone. However, as discussed, the instruction that was given was proper.

The defendant cites Commonwealth vs. Ananias, Dist. Ct. of Mass., No. 1248-CR-1075 (Feb. 16, 2017). The breathalyzer machine used in the present case is the predecessor to the model discussed in Ananias.

We have considered the defendant's other arguments and find them to have no merit. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954) ("Other points, relied on by the defendants but not discussed in this opinion, have not been overlooked. We find nothing in them that requires discussion").