The defendant was charged with murder in the first degree after he and Luis Bodden-Maximo, a rival gang member, exchanged gunfire on Blue Hill Avenue in Boston. No person was hit by any of the shots. Rather, the victim, Kelvin Rowell, died after he ran from the shots, suffered an asthma attack, and went into cardiac arrest. The defense theory was that the defendant did not cause Rowell's death because Bodden-Maximo was the one who fired the first shots, causing Rowell to run.
The jury convicted the defendant of the lesser included offense of involuntary manslaughter, as well as unlawful possession of a firearm. While his direct appeal was pending, the defendant moved in the Superior Court for a new trial,[2] claiming that his trial counsel was constitutionally ineffective for choosing to forego an instruction on self-defense, and that the trial judge erred by suggesting to the jury during deliberations that they had to arrive at a verdict. After a nonevidentiary hearing, the same judge who presided at trial allowed the motion on the ground that counsel's decision to waive a self-defense instruction was manifestly unreasonable. The Commonwealth now appeals. We reverse.
1. Ineffective assistance of counsel. "On the Commonwealth's appeal of the grant of a defendant's motion for a new trial, we consider whether the judge committed a significant error of law or abuse of discretion in allowing the defendant's motion." Commonwealth v. Kolenovic, 471 Mass. 664, 672 (2015). "That discretion, however, 'is not boundless and absolute.' " Ibid., quoting from Commonwealth v. Genius, 402 Mass. 711, 714 (1988). "While we will not disturb a judge's subsidiary findings which are warranted by the evidence, 'ultimate findings and conclusions of law, particularly those of constitutional dimensions, are open for our independent review.' " Commonwealth v. Cousin, 478 Mass. 608, 615 (2018), quoting from Commonwealth v. Walter, 396 Mass. 549, 553-554 (1986). In our review "[we] consider the record in its entirety ... to determine whether 'there exists in the record before us evidence to support the judge's decision to order a new trial.' " Kolenovic, 471 Mass. at 673, quoting from Commonwealth v. Lane, 462 Mass. 591, 597 (2012).
To establish ineffective assistance of counsel, the defendant has the burden of satisfying both prongs of the familiar Saferian test: he must prove, first, that counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and, second, that the deficient performance prejudiced the defendant by "likely depriv[ing] [him] of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Focusing on the second prong, the Commonwealth argues that the defendant failed to establish prejudice because the evidence at trial did not raise a reasonable doubt that he acted in self-defense. While we think this argument has some force,[3] we need not resolve it because, even assuming that the evidence warranted a self-defense instruction, counsel's decision to forego the instruction did not render his performance constitutionally ineffective.
"Where, as here, the defendant's ineffective assistance of counsel claim is based on a tactical or strategic decision, the test is whether the decision was 'manifestly unreasonable when made.' "[4] Kolenovic, 471 Mass. at 674, quoting from Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006). This is an objective standard, which encompasses only those decisions that would not be considered "competent" by "lawyers of ordinary training and skill in the criminal law." Ibid., quoting from Commonwealth v. Pillai, 445 Mass. 175, 186-187 (2005). In other words, the standard "is essentially a search for rationality in counsel's strategic decisions." Ibid.
The defendant argued in his motion, and the judge agreed, that there was no conceivable strategic reason behind counsel's decision to forego a self-defense instruction, given the concession in counsel's affidavit that "a self-defense theory would not have been inconsistent with the causation theory" he pursued at trial. But to the contrary, counsel's strategic reason is stated in the affidavit: "I ultimately decided not to request a self-defense instruction because I wanted to focus on my primary theory that the defendant did not cause Rowell's death." That the two theories are not inconsistent does not necessarily mean that it was manifestly unreasonable for counsel to pursue only one. See Commonwealth v. Glover, 459 Mass. 836, 843-844 (2011) (although instruction on reasonable provocation would not have been "inconsistent with [counsel's] pursuit of an acquittal on grounds of self-defense, ... it was not manifestly unreasonable for defense counsel to proceed solely on a theory of self-defense"). Rather, counsel's choice to forego a self-defense instruction can only be ineffective in the constitutional sense if it was "so manifestly unreasonable as to be unprotected by the labels of 'trial strategy' or 'trial tactics.' " Commonwealth v. Norris, 462 Mass. 131, 141-142 (2012), quoting from Commonwealth v. Smith, 459 Mass. 538, 554 (2011).
For several reasons we conclude that counsel's choice was not manifestly unreasonable. As his affidavit acknowledges, a self-defense theory would have shared the same "factual premise" as the causation theory he pursued at trial-"that the defendant shot second, after being ambushed and fired upon by Bodden-Maximo." But had counsel pursued a self-defense theory, the jury would have had to consider several additional elements, including whether the defendant "actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force" and whether he "availed himself of all proper means to avoid physical combat before resorting to the use of deadly force." Commonwealth v. Harrington, 379 Mass. 446, 450 (1980). Given the paucity of evidence on these elements,[5] it was rational for counsel to focus the jury on the causation theory, which required only that they find reasonable doubt as to whether the defendant was the first shooter. See Glover, 459 Mass. at 844 (not manifestly unreasonable for counsel to forego instruction on reasonable provocation where "the evidence more strongly supported excessive use of force in self-defense than reasonable provocation"); Kolenovic, 471 Mass. at 675 ("[C]ounsel was aware of the options but made the strategic decision that a lack of criminal responsibility or diminished capacity defense was unlikely to succeed").
Indeed, although counsel initially requested a self-defense instruction, he withdrew his request after "preparing over the weekend," explaining that the basis for the withdrawal was his assessment of "the facts of the case." Counsel's own statements therefore establish that he made a strategic decision based on the evidence presented. That decision was not manifestly unreasonable when made, especially considering that counsel presented the causation theory as an all-or-nothing choice to the jury. As he repeatedly argued in summation, if the Commonwealth failed to prove that the defendant was the first shooter, the jury had to find the defendant not responsible for Rowell's death.[6] Thus, because the causation theory would have resulted in acquittal if successful, it was rational for counsel to not also pursue a theory of self-defense, given its shared factual premise but potential pitfalls. Cf. Glover, 459 Mass. at 844 (not manifestly unreasonable for counsel to forego theory that "at best could yield conviction of [lesser-included offense]").
For these reasons, and while we appreciate that we owe special deference to the judge who presided at trial, we conclude that he erred in his ultimate ruling that counsel's strategic decision was manifestly unreasonable. The motion for a new trial should not have been allowed on this basis. See Kolenovic, 471 Mass. at 675 (reversing allowance of motion for new trial where counsel's decision "was an informed exercise of his prerogative to decide on the defense strategy").
2. Jury deliberations. We thus turn to the defendant's second argument, that the judge erred by suggesting to the jury that they had to reach a verdict. On their third day of deliberations, the jury sent a note to the judge asking, "What if we truly cannot come to a unanimous agreement?" After determining that a Tuey-Rodriquez [7] charge was not yet warranted, the judge responded as follows:
"The answer to that is the law requires that you do come to a unanimous agreement, the unanimous agreement of not guilty or unanimous agreement of guilty. And I encourage you to continue your deliberations, to listen to one another and to reach a unanimous verdict as you feel is appropriate. So I'm going to send you back to deliberate now at this stage."
The defendant did not object.
We conclude that the judge's response did not give rise to a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). Although the phrasing was not ideal, it is materially similar to the language that we deemed not impermissibly coercive in Commonwealth v. O'Brien, 65 Mass. App. Ct. 291, 294-296 (2005). Moreover, in his main charge, the judge made clear that the jury should "reach a verdict if [they could] do so in good conscience" but "should not surrender [an] honestly held conclusion simply to arrive at a verdict." Considering the charge as a whole, as we must, see Commonwealth v. Raymond, 424 Mass. 382, 386 (1997), we do not see a substantial risk that the language used by the judge coerced the jury into returning a verdict. See Commonwealth v. Diaz, 19 Mass. App. Ct. 29, 34 (1984), and cases cited.
Order allowing motion for new trial reversed.

The defendant's direct appeal has been stayed pending resolution of the motion.

In particular, we think it is a close question whether the evidence raised a reasonable doubt that the defendant availed himself of all means to avoid physical combat before resorting to the use of deadly force. Viewing the evidence in the light most favorable to the defendant, the judge found that the defendant initially began to retreat by "[running] away from the shots" (presumed to have been fired by Bodden-Maximo), but then "turned to shoot back towards the source of the shots so as to provide cover as he ran away." There was no evidence, however, that Bodden-Maximo fired additional shots or that he pursued the defendant.

We are not bound by the Commonwealth's concession at oral argument that counsel's decision was manifestly unreasonable. "[O]ur judicial obligations compel us to examine independently the errors confessed." Commonwealth v. Poirier, 458 Mass. 1014, 1015 (2010), quoting from Young v. United States, 315 U.S. 257, 258-259 (1942). Accord Commonwealth v. DeJesus, 468 Mass. 174, 182 n.8 (2014) ; Commonwealth v. McCollum, 79 Mass. App. Ct. 239, 248-249 (2011).

See note 2, supra. We also note that, because a self-defense theory would have required inquiry into the defendant's subjective state of mind, counsel could rationally have thought that pursuing the theory would allow the prosecutor to emphasize the defendant's postarrest interview, in which he denied that he was even at the scene of the shooting, while making various conflicting statements about his whereabouts on that night.

In this vein, given the guilty verdict on the manslaughter charge, we think it questionable whether the defendant met his burden of proving prejudice under the second prong of Saferian. See Commonwealth v. Millien, 474 Mass. 417, 432 (2016) ("[A] defense is 'substantial' for Saferian purposes where we have a serious doubt whether the jury verdict would have been the same had the defense been presented"). Cf. Glover, 459 Mass. at 845 ("no serious doubt" that result would have been different had counsel pursued theory of reasonable provocation in addition to theory of self-defense, where "evidence of excessive use of force in self-defense, while itself meager, was stronger than the evidence of reasonable provocation"). But on the view we take of the case, we need not address this issue.

See Commonwealth v. Rodriquez, 364 Mass. 87, 101-102 (1973) (Appendix A).