NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12235

COMMONWEALTH vs. GEORGE T. RHODES, JR.

Plymouth.      May 15, 2019. - August 16, 2019.

Present: Gants, C.J., Gaziano, Lowy, Budd, Cypher, JJ.


Homicide. Practice, Criminal, Capital case, New trial, Assistance of counsel, Request for jury instructions. Constitutional Law, Assistance of counsel.



Indictment found and returned in the Superior Court Department on December 12, 2014.

The case was tried before Richard J. Chin, J., and a motion for a new trial, filed on December 26, 2017, was heard by him.


Joseph M. Kenneally for the defendant.
Keara L. Kelley, Assistant District Attorney, for the Commonwealth.


LOWY, J. A jury convicted the defendant of murder in the first degree. In a motion for a new trial, the defendant argued that his trial counsel was constitutionally ineffective for failing to request a voluntary manslaughter jury instruction based on reasonable provocation stemming from the defendant's

reaction to an injury to his penis that the victim inflicted during a sexual encounter. The motion was denied. We conclude that the motion judge abused his discretion in determining that trial counsel's decision to not request a voluntary manslaughter instruction was a reasonable tactical choice. Accordingly, we vacate the jury's verdict and remand the matter to the Superior Court for a new trial consistent with this opinion.[1]

Background. Because we are called upon to determine whether an instruction on voluntary manslaughter was warranted, we recite the facts in the light most favorable to the defendant, reserving certain facts for later discussion. See Commonwealth v. Howard, 479 Mass. 52, 57 (2018).

On September 8, 2014, the victim left her home in Brockton after having an argument with her daughter. At approximately 9 P.M., the victim met the defendant, whom she had not previously

---

[1] The defendant also argues that the prosecutor made three statements in her closing argument that were not supported by the evidence. Two statements suggested that the victim was aware of her impending death while she lay on the floor of the garage, and the third statement asserted that there was evidence that the defendant strangled the victim. None of these statements was objected to, and the defendant contends they created a substantial likelihood of a miscarriage of justice. Because we reverse the conviction on other grounds, we need not determine whether the prosecutor's statements were proper arguments "for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence." Commonwealth v. Kozec, 399 Mass. 514, 516 (1987). We remind the Commonwealth, however, to be certain that all arguments raised at the defendant's new trial are squarely grounded in the evidence presented.

known.  The pair spent the evening smoking marijuana and drinking together.  Surveillance video captured them walking on Main Street between 10 and 11 P.M., at one point walking with their arms intertwined.

At 10:56 P.M., video appears to show the defendant and the victim entering a nearby garage bay where a local towing company stored many of its vehicles.  Ten minutes later, surveillance shows the defendant leaving the garage bay alone, carrying a bag similar to the bag the victim was seen carrying earlier in that night.  Shortly thereafter, a tow truck driver arrived at the garage, unaware that the victim lay on the floor injured.  He backed the truck into the bay, running over the victim's body.[2]  At that time, the victim was still alive.  She was taken to a hospital and pronounced dead at 11:57 P.M.

The jury heard testimony from both the doctor who examined the victim at the hospital and the doctor who performed her autopsy.  When the victim arrived at the hospital, she was wearing only a shirt.  She had no pulse.  The emergency room doctor described the victim's numerous injuries, including head trauma and facial swelling, a broken pelvis, fluid in her abdomen, and an ankle injury.  The victim had three star-shaped

---

[2] The truck caused injuries to the victim's legs and torso, whereas separate blunt force trauma caused the injuries to her head.

wounds to her head, evidence of a skull fracture, blood in her ear canals, and a swollen eye. Her head injuries were severe and, in the emergency room doctor's opinion, inconsistent with being struck by a tow truck. The medical examiner reiterated that the victim had several blunt force injuries to her head and face and severe internal injuries, which were caused by an incident separate from the incident that caused the head injuries.

An expert also testified for the defendant. All three experts agreed that the victim suffered at least three head injuries, and there was conflicting testimony whether the head injuries would have been fatal even had the victim not subsequently been hit by the tow truck. Only the defendant's expert opined that the victim's head injuries were not independently fatal. Bloody tracks from the truck's tires indicated that the victim's head injuries had occurred before she was hit by the truck.

While the defendant was being booked at the police station, he showed police an injury that one officer described as a "dime size chunk taken out of the tip of his penis." A friend of the defendant's testified that the defendant told him that he had been drinking and smoking marijuana with a girl on the night the victim was killed, that "she was giving him a blow job and she bit his privates" and that "she bit him hard." The friend

further stated that the defendant told him that the girl had blood in her mouth and passed out after she had bitten him.

Deoxyribonucleic acid (DNA) testing confirmed that the defendant's DNA matched blood samples found inside the victim's mouth and other blood stains inside the garage bay.  The defendant's saliva was found on the victim's vagina.  Defense counsel argued in closing, among other things, that the jury would be warranted in finding that the victim bit the defendant during consensual sex and that "in his anger he . . . smashed her head into the ground."

After his conviction, the defendant filed a motion for a new trial, asserting that trial counsel's failure to request a jury instruction on voluntary manslaughter on a theory of reasonable provocation constituted ineffective assistance of counsel.  Trial counsel submitted an affidavit stating that his failure to request that instruction was an oversight and was not part of his trial strategy.  The motion judge, who was also the trial judge, discredited that portion of the affidavit.  In denying the motion for a new trial, the judge determined that a voluntary manslaughter instruction was not supported by the evidence and that defense counsel's failure to request that instruction was a reasonable tactical choice, as voluntary manslaughter would have conflicted with his defense that the tow

truck, and not the defendant, ultimately caused the victim's death.[3]

Discussion.  Because the defendant was convicted of murder in the first degree, we consider his claim of ineffective assistance of counsel under G. L. c. 278, § 33E, to determine whether there was an error that created a substantial likelihood of a miscarriage of justice.  This standard of review is more favorable to a defendant than the constitutional standard. Commonwealth v. Pena, 455 Mass. 1, 22 (2009).  See Commonwealth v. Glover, 459 Mass. 836, 842 (2011) (defining constitutional standard for ineffective assistance of counsel).  "[T]he decision to allow or deny [a motion for new trial] rests within the sound discretion of the motion judge, and we give deference to the factual findings of that judge, particularly when he or she was also the trial judge."  Commonwealth v. LaBrie, 473 Mass. 754, 771 (2016), citing Commonwealth v. Pillai, 445 Mass. 175, 185 (2005).  Where, as here, a claim of ineffective assistance of counsel is based on a strategic decision, we must determine whether that decision was manifestly unreasonable such that "lawyers of ordinary training and skill in the criminal

---

[3] At trial, defense counsel argued that the victim's head injuries were not the cause of her death.  He sought an involuntary manslaughter instruction on the theory that the defendant was wanton and reckless in leaving the victim in the garage bay with a head injury, allowing her to be struck by the tow truck.

law" would not consider it competent. Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015), S.C., 478 Mass. 189 (2017), quoting Pillai, supra at 186-187.

a. Instruction on voluntary manslaughter. An instruction on voluntary manslaughter based on reasonable provocation is warranted where the evidence raises "a reasonable doubt 'that something happened which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant.'" Commonwealth v. Felix, 476 Mass. 750, 756-757 (2017), quoting Commonwealth v. Walden, 380 Mass. 724, 728 (1980).

> "The evidence must be sufficient to create a reasonable doubt in the minds of a rational jury that a defendant's actions were both objectively and subjectively reasonable. That is, the jury must be able to infer that a reasonable person would have become sufficiently provoked and would not have 'cooled off' by the time of the homicide, and that in fact a defendant was provoked and did not cool off" (citation omitted).

Commonwealth v. Groome, 435 Mass. 201, 220 (2001). Physical contact initiated by the victim is not always sufficient to warrant a voluntary manslaughter instruction, see Felix, supra at 757, but "even a single blow from the victim can constitute reasonable provocation." Commonwealth v. Acevedo, 446 Mass. 435, 444 (2006). A victim's conduct must present a "threat of

serious harm" to be considered reasonable provocation.
Commonwealth v. Ruiz, 442 Mass. 826, 839 (2004).

We conclude that the facts of this case, when viewed in the light most favorable to the defendant, supported an instruction on voluntary manslaughter based on reasonable provocation. Here, the defendant was in the midst of a consensual sexual encounter when the victim bit his penis hard enough to remove a "dime size chunk" and drew enough blood that it was in the victim's mouth and elsewhere in the garage bay. Cf. Commonwealth v. Berry, 431 Mass. 326, 335 (2000) (voluntary manslaughter instruction warranted where victim struck defendant with beer bottle). We conclude that this event would "have roused 'in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint'" and resulted in the defendant slamming the victim's head against the cement floor of the garage. Commonwealth v. Burgess, 450 Mass. 422, 439 (2008), quoting Walden, 380 Mass. at 728 (1980).

This case is distinguishable from those in which we concluded that the defendant's actions were not the result of reasonable provocation. See Felix, 476 Mass. at 758 (no reasonable provocation where victim lunged at and punched defendant who had entered her bedroom uninvited and locked door); Commonwealth v. Parker, 402 Mass. 333, 344 (1988), S.C.,

412 Mass. 353 (1992) and 420 Mass. 242 (1995) (no reasonable provocation where elderly disabled victim punched defendant in face twice before defendant strangled him); Commonwealth v. Brown, 387 Mass. 220, 227 (1982) (no reasonable provocation where victim choked defendant by pulling neck of his shirt).

Further, we conclude that the defendant telling his friend that the victim had bitten him hard, and showing his injury to a police officer during booking, unprompted, was sufficient to allow the jury to infer that he was subjectively provoked.  See Commonwealth v. Valentin, 474 Mass. 301, 311 (2016) ("jury must be able to infer from the evidence not only that a reasonable person would have been so provoked, but also that the defendant was in fact provoked and that he or she did not have sufficient time to cool off").[4]

b.  Assistance of counsel.  At trial, defense counsel argued causation, contending that (1) the defendant should be acquitted because the truck caused the victim's death, and (2) the jury should be instructed on involuntary manslaughter on the theory that the defendant was, at most, wanton and reckless for leaving the victim injured in the garage bay.  Unlike the motion

_____

[4] We note that if the jury were to determine that the victim was being sexually assaulted by the defendant at the time that she bit him, then the bite could not serve as mitigation for the defendant's response.  Of course, victims of a sexual assault may defend themselves, and the perpetrator's response to such efforts does not constitute mitigation.

judge, we conclude that it was manifestly unreasonable for trial counsel not to also request an instruction on voluntary manslaughter.

In many circumstances, it is not manifestly unreasonable for a defendant to forgo a possible defense with an eye toward a possible acquittal or conviction of a lesser charge. There is nothing wrong with a defense strategy that follows the advice, attributed to Andrew Carnegie, to "put all your eggs in one basket." See Glover, 459 Mass. at 843-844 (not manifestly unreasonable for defense counsel to proceed on one theory of voluntary manslaughter when each theory was supported by evidence).

Here, however, defense counsel's strategic decision deprived the defendant of effective representation. The evidence viewed in the light most favorable to the defendant could have supported an involuntary manslaughter charge based on the defendant having caused the victim's head injuries and then leaving her unconscious on the garage floor where she was run over by the tow truck. A voluntary manslaughter instruction would not have conflicted with this theory where it also was premised on the defendant having struck the victim's head on the concrete floor. There was compelling evidence in the record -- two of three experts testified that the victim's head injuries would have led to her death, and there was no reasonable

question that the defendant was the last person to see the victim before she was hit by the tow truck -- to support a finding that the defendant killed the victim.  Such an instruction merely would have suggested that, even if the victim was fatally injured by the defendant, the defendant's actions were the result of reasonable provocation, as a manifest and visceral reaction to his injury.  Defense counsel erred when he did not ask for the instruction.

Defense counsel's error created a substantial likelihood of a miscarriage of justice, such that the "error was likely to have influenced the jury's conclusion."  Commonwealth v. Alicea, 464 Mass. 837, 845 (2013), quoting Commonwealth v. Wright, 411 Mass. 678, 682 (1992), S.C., 469 Mass. 447 (2014).

Here, the jury would have been justified in finding that the defendant's actions caused the victim's death, but that he had been reasonably provoked, where evidence on that point was strong.  In closing argument, defense counsel even argued the facts that would have supported an instruction for voluntary manslaughter, stating the jury "would be well warranted in finding that after they engaged in sex, after [the defendant's] penis was bitten, in his anger he went over to [the victim] and smashed her head into the ground."  Absent an instruction on voluntary manslaughter, the jury could not consider this well-argued possibility.  Accordingly, we lack substantial confidence

that the jury verdict would have been the same had the error not been made.  See Commonwealth v. Alcide, 472 Mass. 150, 169 (2015); Commonwealth v. Sena, 429 Mass. 590, 595 (1999), S.C., 441 Mass. 822 (2004).

Conclusion.  Because defense counsel's failure to request a voluntary manslaughter instruction created a substantial likelihood of a miscarriage of justice, we vacate the defendant's conviction and remand the matter to the Superior Court for a new trial consistent with this opinion.

So ordered.