NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-24

COMMONWEALTH

vs.

GEORGE BRADLEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor (OUI), fifth offense.[1] He filed a motion for a new trial in which he alleged that he had been denied the effective assistance of counsel. The motion was denied without a hearing in a detailed and well-reasoned memorandum of decision and order. The defendant's appeal from the denial of the new trial motion was consolidated with his direct appeal. For the following reasons, we affirm the

_____

[1] The judge found the defendant guilty of the fifth offense portion of the OUI charge in a subsequent jury-waived trial. The defendant was also charged with reckless operation of a motor vehicle and unlawful possession of ammunition. Those charges were nolle prossed prior to trial.

conviction and the order denying the defendant's motion for a new trial.[2]

Background.[3]  On April 4, 2019, at approximately 10 A.M., the defendant left Limington, Maine, and headed to Lowell in his pickup truck.  Around noon, he was driving on Lowell Street in Peabody when he attempted to pass a vehicle by driving on the opposite side of the road into oncoming traffic.  Although the defendant was speeding, he could not complete the pass in time, so he swerved back into his lane and in doing so struck the vehicle in front of him.  That car was severely damaged.  The defendant kept driving for another seventy-five yards or so before stopping.  A number of witnesses reported the accident to the police, who arrived quickly.  When the officers approached the truck, they found the defendant leaning against the driver's side door, which was open.  The defendant was sitting on the floor with his back against the driver's seat.  The defendant told the officers that his left leg was injured, and he had difficulty taking his foot off the gas pedal and putting it on the brake.  The officers noted that the defendant's speech was slurred, and his breath smelled of alcohol.  He was unsteady on

_____

[2] The defendant's arguments on appeal only concern the denial of his new trial motion.

[3] We summarize the facts as set forth by the judge in her memorandum of decision and order, supplemented where necessary with references to the transcript.

2

his feet, his eyes were red and bloodshot, and he was argumentative and uncooperative. In response to the officers' questions, he denied drinking any alcohol.

After assisting the defendant to the passenger side of the truck, the police conducted two field assessment tests that did not involve walking, both of which the defendant failed to perform satisfactorily. One officer opined that the defendant was "hammered," and another testified that he was "drunk." The defendant was arrested and transported to the police station, where he continued to be combative and belligerent. Eventually, the defendant was taken to the hospital. His antagonistic behavior did not abate, and he was restrained by officers, who handcuffed him to the hospital bed.

There were three passengers in the defendant's truck at the time of the accident, Tina Harmon, the defendant's then girlfriend, Joseph Denehy, the defendant's son, and Denehy's girlfriend. Harmon told officers at the scene that she had been asleep during the entire trip. However, a few days later, Harmon was interviewed by the police in York, Maine, and provided a different version of events. According to Harmon, the defendant bought liquor along the way from Maine and consumed it while driving. He also had stopped at a bar in Peabody, where he consumed more alcohol.

3

Although Harmon was on the Commonwealth's witness list, the Commonwealth did not expect her to appear. Harmon had maintained little contact with the Commonwealth, and she had also been criminally charged in Massachusetts with theft based on a report by the defendant's mother that she stole some jewelry and a cell phone from the defendant. As it turned out, however, on the second day of trial, Harmon voluntarily arrived at the courthouse to the surprise of the prosecutor and defense counsel.[4] Ultimately, Harmon did testify and her testimony was consistent with the statement she had given to the police in Maine.

At trial, the defendant did not contest that he caused the accident. He contended that, while he was responsible, he was not impaired by alcohol. To this end, he presented testimony from his son, who claimed that the defendant did not have any alcohol throughout the trip from Maine, and from his mother, who saw the defendant at the police station shortly after the accident and testified that the defendant was not intoxicated. Defense counsel outlined this theory of the defense, that the defendant was not intoxicated when he caused the accident, in his opening statement. In addition, based on the assumption that Harmon would not testify, he informed the jury, "There's no

_____

[4] The record reflects that the Commonwealth did not expect Harmon to appear and did not mislead defense counsel in this respect.

4

witness that's going to come in here and say, I saw this person drinking, I saw him having this drink, I saw him at this particular bar."

Discussion.  A judge may grant a new trial "if it appears that justice may not have been done."  Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  "[T]he decision to allow or deny [a motion for a new trial] rests within the sound discretion of the motion judge."  Commonwealth v. Rhodes, 482 Mass. 823, 826 (2019).  Where a motion for a new trial is based on ineffective assistance of counsel, the defendant must show that the behavior of counsel fell "below that . . . [of] an ordinary fallible lawyer" and that such failing "likely deprived [him] of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  "[A]rguably reasoned tactical or strategic judgments" do not amount to ineffective assistance of counsel unless they were "manifestly unreasonable" when made.  Commonwealth v. Rondeau, 378 Mass. 408, 413 (1979), quoting Commonwealth v. Adams, 374 Mass. 722, 728 (1978).

The defendant first argues that his counsel was ineffective when he told the jury in his opening statement that no witness would testify that they had seen him drinking prior to the accident, when, in fact, counsel knew about the statement Harmon

5

had given to the police in Maine.[5]  To begin with, as the judge correctly observed, defense counsel's decision in this regard was a tactical one and, as such, the defendant bore the burden of showing that the decision was "manifestly unreasonable" when it was made.  See Commonwealth v. Martin, 484 Mass. 634, 641 (2020).  We agree with the judge's conclusion that the defendant did not meet this burden.

Although we recognize that predictions made in opening statements can have "drastic ramifications," the fact that counsel's expectations turned out to be incorrect does not retroactively make his decision manifestly unreasonable. Commonwealth v. McMahon, 443 Mass. 409, 425 (2005).  Here, the record is clear that, at the time defense counsel gave his opening, neither party expected Harmon to appear.  She was living in Maine at the time the trial commenced and was no longer dating the defendant.  There was a case pending against her in Peabody District Court for which she was subject to arrest, and the Commonwealth had had little contact with her. Given these circumstances, the judge did not abuse her discretion in concluding that the promise made in counsel's

---

[5] We need not address the defendant's argument that the judge erred by considering his failure to provide an affidavit from defense counsel as detrimental to his claims because we reach our conclusion that he is not entitled to a new trial without drawing a negative inference from the absence of an affidavit from trial counsel.

6

opening statement was not manifestly unreasonable at the time it was made. See Commonwealth v. Sin, 100 Mass. App. Ct. 172, 179-180 (2021), quoting Commonwealth v. Morales, 453 Mass. 40, 45 (2009) ("the judge was in the best position to evaluate counsel's decision and . . . performance," and we "defer to her assessment that trial counsel's strategic choice was not manifestly unreasonable").

Furthermore, even if we were to assume that defense counsel's performance fell measurably below that which might be expected from an ordinary fallible lawyer, we cannot say that the failure to fulfill the promise deprived the defendant of an otherwise available, substantial ground of defense. In light of the overwhelming evidence that the defendant was intoxicated and that his ability to operate a motor vehicle was impaired, we have little difficulty concluding that counsel's unkept promise could not have influenced the jury in reaching their verdict. See Martin, 484 Mass. at 642 (counsel's statements in opening that certain witness would testify was manifestly unreasonable, however, such ineffective assistance requires new trial only if it created substantial likelihood of miscarriage of justice, that is, only if it was reasonably likely to have influenced jury's conclusion). Moreover, the jury was properly instructed that openings are not evidence. We further note that counsel did not abandon the primary theory of the defense. Throughout

7

the trial and in closing argument, he asserted that what occurred was an accident and not a crime. See Commonwealth v. Duran, 435 Mass. 97, 111 (2001) (despite unkept promise that defendant would testify, "[d]efense counsel did not abandon the defendant's alibi defense"). Lastly, the Commonwealth did not exploit the issue in its closing. Id.

Next, the defendant contends that his counsel was ineffective because he was not prepared for Harmon to testify and consequently his cross-examination was ineffective. The judge properly rejected this claim as well. While it is true that defense counsel had failed to obtain certified copies of Harmon's prior convictions, as the Commonwealth notes in its brief, there is no evidence that Harmon had been convicted of a crime for which she could be properly impeached under G. L. c. 233, § 21. Counsel sought to introduce two prior convictions from the State of Maine, one for "theft by unauthorized transfer," and one for criminal trespass. Neither met the criteria for admissibility. Accordingly, counsel's failure to obtain certified copies was inconsequential. Furthermore, and more importantly, defense counsel did impeach Harmon with her prior conviction for criminal trespass and he also questioned Harmon about her pending case in Peabody. Counsel then used this testimony to the defendant's advantage in his closing argument and suggested that Harmon was biased. Counsel stated,

8

"She [Harmon] has an open case here in Massachusetts that's being prosecuted by this office.  Might tell you something about why she's here."  Thus, even if we assume, as the defendant asserts, that counsel was not prepared to cross-examine Harmon, ultimately, he impeached her credibility and used that testimony to argue in closing that Harmon had a motive to testify falsely. Accordingly, the judge did not abuse her discretion in denying the defendant's motion for a new trial on this ground.

> Judgment affirmed.
>
> Order denying motion for new
>    trial affirmed.
>
> By the Court (Vuono, Singh &
>    Englander, JJ.[6]),

*Joseph F. Stanton*

Clerk

Entered:  December 26, 2023.

---

[6] The panelists are listed in order of seniority.